96 So.2d 582

Henry H. BOLIN

v.

STATE of Alabama.

6 Div. 288.

Supreme Court of Alabama.

June 20, 1957.

258.

Cooper, Mitch & Black, Birmingham, for appellant.

John Patterson, Atty. Gen., and Robt. P. Bradley and Wm. C. Younger, Asst. Attys. Gen., for the State.

SIMPSON, Justice.

Response to question certified by the Court of Appeals.

The appellant was tried and convicted under Count 2 of an indictment charging that he "did have in his possession for the purpose of making, producing or manufacturing a stink bomb, or a substitute or device therefor, to-wit, three fourths of a liquid ounce of ethyl mercaptan, one of the ingredients necessary or commonly used in making, producing or manufacturing such stink bomb or substitute or device therefor, against the peace and dignity of the State of Alabama."

This indictment was drawn under § 369, Title 14, Code of 1940, which is as follows:

"It shall be unlawful for any person or persons to make, manufacture, or possess, or to place, or deposit or throw any stink bombs or tear gas bomb or any substitute or device used therefor which contains foul or offensive odors, in any public building, or store house, or theatre, or motion picture theatre, or any private residence, or any boarding house or other building where people lodge or reside, or within the curtilage of any such building, or on any sidewalk or street in front of any such building or in front of or near any rear or side entrance to any such building, or at any exit to any such building, or in, at, or near any hole or vent, or ventilator in any such building, or for any person or persons to have in their possession for the purpose of making, producing or manufacturing any stink bomb, or tear gas bomb, or any substitute or device therefor, any of the ingredients necessary or commonly used in making, producing or manufacturing such stink bomb or substitute or device therefor."

The part of the section pertinent for consideration here is that which prohibits "any person or persons to have in their possession for the purpose of making * * * any stink bomb, * * * any of the ingredients necessary or commonly used in making * * * such stink bomb * *."

It is contended by the appellant that said section is vague and uncertain and that the true meaning of the statute is not apparent from its face, and that said section is violative of Article 1, § 6, Constitution of Alabama, and Amendment 14 of the United States Constitution.

The Court of Appeals was of the opinion that said section is unconstitutional in that it makes the mental attitude of the actor the sine qua non of the offense, and further that the statute uses words of no "ascertainable" meaning. Hence the inquiry to this Court. Title 13, § 98, Code of 1940.

We think the view held by the Court of Appeals to be correct.

If the provision can be sustained as constitutional it must be under the police power of the state which authorizes the imposition of reasonable regulations in the interest of public health, public morals, public safety or the general welfare. Looking to one of the earliest authorities, Blackstone defines this power to be "the due regulation and domestic order of the kingdom: whereby the individuals of the State, like members of a well governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood, and good manners; and to be decent, industrious and inoffensive in their respective stations." 4 Blackstone Commentaries 162.

Mr. Justice Holmes, speaking for the Supreme Court of the United States in Noble State Bank v. Haskell, 219 U.S. 104, 111, 31 S.Ct. 186, 188, 55 L.Ed. 112, 32 L.R.A., N.S., 1662, Ann.Cas.1912A, 487, observed:

"It may be said in a general way that the police power extends to all the great public needs. Camfield v. United States, 167 U.S. 518, 17 S.Ct. 864, 42 L.Ed. 260. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare."

Consonant with this general theory it has been held that the police power of the state is validly exercised when legislation is enacted to suppress the evils of intemperance and to regulate or outlaw the carrying on of other activities regarded by the general opinion as great public evils. But if a provision of a statute is arbitrary or has no reasonable relation to the object sought to be accomplished by an otherwise valid enactment, the courts will strike it down as an unwarranted exercise by the legislature of the states' police power. Southern Express Co. v. Whittle, 194 Ala. 406, 69 So. 652, L.R.A.1916C, 278.

Otherwise expressed the police power may not be employed to prevent evils of a remote or highly problematical character. Nor may its exercise be justified when the restraint imposed upon the exercise of a private right is disproportionate to the amount of evil that will be corrected. However, the fact that, as a matter of practical operation, innocent parties or property will necessarily be affected to some slight extent, will not render the legislation unconstitutional. Furthermore, acts innocent in themselves may be ordered or prohibited if this be practically necessary in order to secure an efficient enforcement of a valid police order. Willoughby on the Constitution of the United States, 2d Ed., Vol. 3, § 1180, p. 1778.

"The scope of the police power is to be measured by the legislative will of the people upon questions of public concern, not in acts passed in response to sporadic impulses or exuberant displays of emotion, but in those enacted in affirmance of established usage or by such standards of morality and expediency as have by gradual processes and accepted reason become so fixed as fairly to indicate the better will of the

people in their social, industrial, and political development." 11 Am.Jur., § 270, p. 1014.

■ It is also settled law that "In enacting a criminal statute, there is an obligation on the State to so frame it that those who are to administer it and those to whom it is to be administered may know what standard of conduct is intended to be required and legislation may run afoul of the due process clause because of a failure to set up any sufficient guidance to those who would be law-abiding, or to advise a defendant of the nature and cause of an accusation he is called on to answer, or to guide the courts in the law's enforcement." Kahalley v. State, 254 Ala. 482, 483, 48 So. 2d 794, 795; Seals v. State, 239 Ala. 5, 194 So. 682; Standard Oil Co. v. State, 178 Ala. 400, 59 So. 667; Carter v. State, 243 Ala. 575, 11 So.2d 764.

■ And a person is not required to speculate as to the meaning of a statute at the peril of his freedom. Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S. Ct. 618, 83 L.Ed. 888. The intent of the legislature must appear from the face of the statute. Standard Oil Co. v. State, supra.

■ Guided by these approved canons of constitutional construction, we think it clear that the quoted provision of said § 369 cannot be upheld. It arbitrarily pronounces as unlawful all possession, whether innocent or criminal, of any ingredient, etc., for the purpose of making stink or tear gas bombs. No standards of conduct are set up to guide the innocent or warn the criminal, or to advise a defendant of the nature and cause of the accusation or to guide the courts in administering that provision of the statute. Certainly such a sweeping prohibition has no reasonable relation to the object intended, namely, the throwing or depositing of such bombs so as to offend innocent persons. The record discloses, and we know, that these various ingredients are and may be used for many industrial, agricultural and other beneficent purposes, but the sweeping provisions of the statute make criminal all such possession. This under the authorities, supra, makes it violative of the constitutional provisions, supra.

While § 370 of Title 14 excludes certain persons, i. e., "regular licensed druggist or chemist or except a person who has the same in possession for medicinal or domestic purposes," from the application of § 369, this exclusion is not far reaching enough. Except for the exclusions enumerated, it marks no lines between lawfulness and criminality but rather condemns all acts alike of the kind specified and prohibited. Kahalley v. State, supra; Eidge v. City of Bessemer, 164 Ala. 599, 51 So. 246, 26 L.R. A.,N.S., 394; Connor v. City of Birmingham, 36 Ala.App. 494, 60 So.2d 474 (certiorari denied and holding of Court of Appeals approved in 257 Ala. 588, 60 So.2d 479).

We, of course, do not have before us and do not decide upon the validity vel non of the other portion of the statute making it unlawful to make, manufacture or possess, etc., the completed product, namely, stink bomb or tear gas bomb.

■ We would in this connection, however, observe that while no cogent argument can be found to deny to the legislature the power to declare "stink bombs and tear gas bombs" unlawful when in the possession of unauthorized persons, our statute as heretofore noted—unlike other state statutes—makes no provision for the possession of such bombs by police departments, military units, educational institutions, etc. We will not question the wisdom of the legislature to declare "stink and tear gas bombs" as being nuisances per se, yet ordinarily provision should be made for the lawful use or possession of an article not in itself inherently evil. " 'The police power of the Legislature, in reference to the prohibition of nuisances, is limited to the prohibition or regulation of those acts which injure or otherwise interfere with the rights of others,' and what is a nuisance is a judicial question." Alabama Great Southern R. Co. v. Cummings, 211 Ala. 381, 100 So. 553, 555, 33 A.L.R. 439.

■ We think the stated provision has another vice. That part of the statute which stamps as unlawful the "possession for the purpose of making * * * any stink bomb, or tear gas bomb * * * any of the ingredients necessary or commonly used in making * * * such stink bomb" has the same vice against its validity as inhered in the statute considered in the case of Carter v. State, supra, because the offense is made to stand not upon the result or effect of the act, but upon the intent with which the act is committed. In that case the pertinent part of the act there considered provided:

"Any person, firm, corporation or association of persons who, without a just cause or legal excuse, wilfully or wantonly does any act with the intent or with reason to believe that such act will injure, interfere with, hinder, delay, or obstruct any lawful business or enterprise, in which persons are employed for wages; * * * shall be guilty of a misdemeanor." § 59, Title 14, Code of 1940.

In denouncing the act as an unconstitutional abuse of legislative power, this Court observed:

"The misdemeanor is left to stand not upon the result or effect of the act but upon 'the intent or with reason to believe that such act will injure, interfere with, hinder, delay, or obstruct,' a lawful business or enterprise. Otherwise stated, the mental attitude of the actor, which may have no effect at all, is the sine qua non of the misdemeanor.

* * * * * *

"This statute goes deeper than to punish one for what he may express in words. It seeks to punish one for what he thinks or believes, regardless of the potency or impotency of the act prompted by thought or belief, to accomplish the result intended or believed to follow such act. This is a legislative abuse of the police power of the state." Carter v. State, 243 Ala. 575, 576, 11 So.2d 764, 765.

The same rationale must necessarily lead to the same conclusion with reference to the statute instantly considered. The act proscribes the possession for the purpose of making which is no different from the intent of making. 22 Words and Phrases, Intention, p. 14; 35 Words and Phrases, Purpose, p. 546. Manifestly, the validity of the act now under view and the one in the Carter case cannot be differentiated on any rational basis, the act of possession (a single act) with intent under the instant statute and *"any act* with the intent" under the statute in the Carter case are similar legislative proscriptions, and as was held, the mental attitude of the actor is the sine qua non of the offense. We have not yet reached the dizzy heights—we hope—of sophistical constitutional interpretation to hold that one can be punished for what he "intends" or "purposes" to do.

■ Further rationalizing. As to the evidentiary presumption sought to be established in favor of the State by § 370, Title 14, a fatal defect exists when applied to that part of § 369 here involved. Section 370 states "such possession shall be prima facie evidence that such person had the same for the purpose of making, producing or manufacturing such stink bomb," etc. It would seem that such evidentiary presumption would allow the state to prove the corpus delicti and in the absence of defensive evidence override an accused's presumption of innocence and authorize a conviction of the very crime charged in § 369.

The Supreme Court of the United States in Bailey v. Alabama, 219 U.S. 219, 31 S.Ct. 145, 146, 55 L.Ed. 191 (holding unconstitutional an Alabama statute [Gen.Acts of Alabama 1903, p. 345, as amended by Gen. Acts of Alabama 1907, p. 636] reading in part "Any person who, with intent to injure or defraud his employer, enters into a contract in writing for the performance of any act of service, and thereby obtains money or other personal property from such employer, and with like intent, and without just cause, and without refunding such money, or paying for such property, refuses or fails to perform such act or service, must on

conviction * * *. And the refusal or failure of any person, who enters into such contract, to perform such act or service, or to cultivate such land, or refund such money, or pay for such property, without just cause, *shall be prima facie evidence of the intent* to injure his employer or landlord or defraud him.") (Emphasis supplied), speaking through Mr. Justice Hughes said:

"There is also a rule of evidence enforced by the courts of Alabama which must be regarded as having the same effect as if read into the statute itself, that the accused, for the purpose of rebutting the statutory presumption, shall not be allowed to testify 'as to his uncommunicated motives, purpose, or intention.' * * *

"Prima facie evidence is sufficient evidence to outweigh the presumption of innocence, and if not met by opposing evidence, to support a verdict of guilty. 'It is such as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for the purpose.'"

Speaking further of this statute, the court observed:

"Consider the situation of the accused under this statutory presumption. If, at the outset, nothing took place but the making of the contract and the receipt of the money, he could show nothing else. If there was no legal justification for his leaving his employment, he could show none. If he had not paid the debt, there was nothing to be said as to that. The law of the state did not permit him to testify that he did not intend to injure or defraud. Unless he were fortunate enough to be able to command evidence of circumstances affirmatively showing good faith, he was helpless. He stood, stripped by the statute of the presumption of innocence, and exposed to conviction for fraud upon evidence only of breach of contract and failure to pay."

Although the statute in the Bailey case, supra, was declared unconstitutional as violating constitutional provisions other than the Fourteenth Amendment, we do not think it would be a strained construction to adopt the argument made there (with reference to the evidentiary presumption feature of the statute) to the instant statute (§ 370, Title 14) to the conclusion that such a statute deprives a defendant of the presumption of innocence where mere possession of ingredients "commonly used" is made the basis of the crime charged.

 It does not take a scientist or chemist to imagine several common ingredients that, when mixed together, would effect an odor that would enable the finished product to be termed a "stink bomb". But to say that the possession of these ingredients, many of which are commonly used in everyday living, gives rise to the presumption that they will be used for the purpose of concocting a "stink bomb", perverts, in our opinion, the theory that the possession of articles, not in and of themselves unlawful, has a reasonable relation to the enforcement and prevention of the evil sought to be suppressed. Since this court can take judicial knowledge that many gases, liquids, acids and chemicals used daily in businesses, industries, agriculture, etc., could be used to manufacture "stink bombs", the words "necessary or commonly" as used in our statute have, at best, a nebulous connotation which does violence to the exactness required in criminal statutes.

Suggestion has been made in consultation that such a construction might not consist with such valid enactments as instance, § 131, Title 29, Code of 1940, of the prohibition law making it "unlawful for any person, firm or corporation in this state to manufacture, sell, give away, or have in possession, any *still, apparatus, appliance, or any device or substitute therefor*, to be used for the purpose of manufacturing any prohibited liquors or beverages." We think the statutes readily distinguishable. The evil sought to be suppressed in all of our liquor statutes is the making, possession and

transportation, etc., of illegal liquors or beverages. The possession of a still or substitute therefor has a reasonable relationship to the evil sought to be suppressed. The next section, 132, of the liquor statute makes provision that the unexplained possession of any part or parts of any still, etc., shall be prima facie evidence of the violation of this article. The possession of such articles, however, is not made unlawful but their unexplained possession is merely an evidentary presumption so that when taken in connection with other evidence would authorize a judge or jury to find that a defendant had committed the crime of possessing a complete still or substitute therefor, to be used for the purpose of manufacturing prohibited liquors or beverages.

The evil sought to be suppressed by the first part of § 369, Title 14, is the depositing or throwing of a "stink or tear gas bomb" in a place that would offend an innocent person or the general public. The possession of such a bomb by unauthorized persons has a reasonable relation to the evil sought to be suppressed and would, in our opinion, be a lawful exercise of the police power. But to make the possession of a commonly used stink or tear gas bomb ingredient for the purpose of making such bomb a crime, is so vague and uncertain as to be disproportionate to the evil sought to be suppressed and must be condemned as an unwarranted abuse of the police power of the state and offensive to the mentioned sections of our State and Federal Constitutions.

LIVINGSTON, C. J., STAKELY and COLEMAN, JJ., concur.

LAWSON, GOODWYN and MERRILL, JJ., dissent.

MERRILL, Justice (dissenting).

I cannot follow the reasoning of the majority opinion, nor can I see any reasonable distinction between the cited prohibition law statutes and the ones dealing with stink bombs. The cited prohibition law statutes probably have been construed as often as any of our penal statutes in the past thirty-eight years, and to my mind, they furnish settled and established guidance for application to the instant case.

Title 29, § 131, Code 1940, makes it unlawful for a person to "have in possession, any still, apparatus, appliance, or any device or substitute therefor, to be used for the purpose of manufacturing any prohibited liquors or beverages."

Title 14, § 369, Code 1940, makes it unlawful for any person to "have in their possession for the purpose of making, producing or manufacturing any stink bomb, or tear gas bomb, or any substitute or device therefor, any of the ingredients necessary or commonly used in making, producing or manufacturing such stink bomb or substitute or device therefor." I submit that the only difference in the two parts of the quoted statutes is the position of the phrase "for the purpose of" in the two sentences, and that, in effect, the two statutes have the same legal significance in relation to their respective subjects.

Title 29, § 132, reads:

"The unexplained possession of any part or parts of any still, apparatus, or appliance, or any device or substitute therefor, commonly or generally used for, or that is suitable to be used in, the manufacture of prohibited liquors and beverages shall be prima facie evidence of violation of this article."

Our cases hold that in "possession" cases, §§ 131 and 132 must be considered together. Section 132 is a rule of evidence; it creates no crime and fixes no penalty, but simply fixes what will be prima facie evidence of a violation of the preceding section of the code when certain facts are proven, which are the unexplained possession of any part or parts of any still, apparatus or appliance, or any device or substitute therefor, commonly or generally used for, or suitable to be used in the

manufacture of prohibited liquors or beverages. Little v. State, 27 Ala.App. 119, 166 So. 618.

It would be a violation of § 131 if a person possessed any still, apparatus, appliance or other device for the *purpose of manufacturing prohibited liquors*, whether such devices were or were not generally used or are suitable to be used for such purpose. But in order for the possession of the devices to make out a prima facie case under § 132, they must be of such character as in common use are suitable for the purpose of manufacturing liquor. Wilson v. State, 211 Ala. 574, 100 So. 917. The possession of a complete still is not unlawful unless it is for the purpose of manufacturing prohibited liquors. This is a constituent element of the offense denounced by the statute. Masters v. State, 18 Ala.App. 614, 94 So. 249; Reese v. State, 18 Ala.App. 357, 92 So. 77; Gamble v. State, 19 Ala.App. 82, 95 So. 202; Wilson v. State, supra.

Under these two sections, the possession of certain enumerated articles has been held sufficient to support a conviction:

(1) A tub, a trough containing some wet meal and one or two little cans or buckets such as are used for dipping water. Arthur v. State, 19 Ala.App. 311, 97 So. 158.

(2) A can and a copper worm that defendant testified that he had found. Bell v. State, 20 Ala.App. 150, 101 So. 158.

(3) A 100-pound lard can, a trough and a cap. Harvey v. State, 20 Ala.App. 264, 101 So. 512.

(4) A copper still can and still cap in the loft of defendant's dwelling house. Watford v. State, 21 Ala.App. 428, 109 So. 174.

(5) A lard can, a cap and some mash. Whigham v. State, 21 Ala.App. 454, 109 So. 281.

(6) A copper worm, some pipe and some copper connections in a wagon which defendant was driving along a road. Horton v. State, 22 Ala.App. 114, 113 So. 279.

(7) "Parts of a still" which defendant claimed he possessed for a perfectly legitimate purpose. Jones v. State, 25 Ala.App. 346, 146 So. 424.

The statute relating to the possession of ingredients for manufacturing stink bombs as being prima facie evidence is Tit. 14, § 370, which reads:

"When any person or persons are found in possession of any of the ingredients which are commonly used for making, producing or manufacturing any such stink bomb or substitute or device therefor, except a regular licensed druggist or chemist or except a person who has the same in possession for medicinal or domestic purposes, such possession shall be prima facie evidence that such person had the same for the purpose of making, producing or manufacturing such stink bomb or tear gas bomb or substitute or device therefor, or for the purpose of depositing, throwing or disposing of the same in violation of sections 369–371 of this title, and the burden of proof shall rest upon the defendant to prove that such articles or ingredients were in his possession for lawful purposes not prohibited by sections 369–371 of this title."

This section corresponds to Tit. 29, § 132, except that it specifically exempts a regular licensed druggist or chemist or a person who has the ingredients in his possession for medicinal or domestic purposes.

Thus, just as Tit. 29, § 131, makes it unlawful for a person to possess an appliance to be used for the purpose of manufacturing prohibited liquors, so Tit. 14, § 369, makes it unlawful for a person to have in his possession any ingredients used to produce stink bombs for the purpose of manufacturing such stink bombs. Certainly, it would seem that § 369, Tit. 14, no more "makes the mental attitude of the actor the sine qua non of the offense" than does § 131, Tit. 29.

Also, just as Tit. 29, § 132, makes the unexplained possession of any part of a still commonly used for the manufacture

of prohibited liquors prima facie evidence that the defendant possessed a complete still for the purpose of manufacturing prohibited liquors, so Tit. 14, § 370, makes the unexplained possession of any ingredients commonly used for the making of stink bombs prima facie evidence that the defendant possessed such ingredients for the purpose of manufacturing such stink bombs, subject to certain enumerated exceptions.

We now revert to the question of the constitutionality of the statutes. The constitutionality of our prohibition laws has been upheld repeatedly. Jones v. State, 17 Ala.App. 444, 85 So. 839; Brogden v. State, 18 Ala.App. 56, 88 So. 366; Ricketts v. State, 18 Ala.App. 162, 90 So. 137, certiorari denied 206 Ala. 701, 90 So. 925; and in Coats v. State, 257 Ala. 406, 60 So.2d 261, 262, this Court, all the Justices concurring, stated in reference to Tit. 29, § 132, "We know of no constitutional right which such a statute infringes."

Under the same principles by which our courts have held the prohibition law statutes constitutional, I would hold that part of the statute constitutional which was certified to us by the Court of Appeals, which is:

" 'It shall be unlawful * * * for any person or persons to have in their possession for the purpose of making, producing or manufacturing any stink bomb, or tear gas bomb, or any substitute or device therefor, any of the ingredients necessary or commonly used in making, producing or manufacturing such stink bomb or substitute or device therefor.' " [96 So.2d 592]

Just as it is within the police power of the state to enact and enforce the liquor laws to preserve the health, morals or safety of the public, even more so is that power being properly exercised when a statute like the one under consideration is enacted by the legislature. The depositing of a stink or tear gas bomb is usually a sneaky act, as a consequence of which property can be destroyed and men, women and children could possibly be trampled to death if such bombs were deposited in a crowded theatre or like building.

I think I have already demonstrated that the statute does not seek "to punish one for what he thinks or believes" as was the case in Carter v. State, 243 Ala. 575, 11 So.2d 764, 766, but to punish one who possesses stink bomb ingredients *for the purpose of making, producing* or manufacturing *a stink bomb.* I do not think the Carter case is an apt authority.

I am unable to follow the Court of Appeals in this paragraph:

"We are further of the conclusion that the quoted portion of Section 369, supra, is unconstitutional in that it uses words of no ascertainable meaning, and can include within its scope acts which are innocent of any relation to stink bombs, and sets no ascertainable standard of conduct."

The quoted words of the statute, taken separately, and as arranged in the sentence, have an "ascertainable meaning" and are clear and unambiguous. The words do not include acts which are innocent of any relation to stink bombs because the only possession of ingredients which is unlawful is a *possession for the purpose of manufacturing a stink or tear gas bomb.* Referring again to the cases construing Tit. 29, §§ 131 and 132, the possession of stills, lard cans, troughs, caps, tubs, copper worms, wet meal, pipes, cans and buckets are innocent acts, but they become unlawful acts when they are possessed for the purpose of manufacturing prohibited liquors. Just so, the possession of ingredients commonly used to make stink bombs is innocent, but such possession becomes unlawful when it is "for the purpose of making, producing or manufacturing any stink bomb." That is the standard of conduct. The possession must be for the purpose set out in the statute to be unlawful.

It follows that it is my opinion that the quoted part of Tit. 14, § 369, supra, is constitutional; and I must of necessity dissent.

LAWSON and GOODWYN, JJ., concur.