Appellant, Kenneth Jones, was indicted by the Jefferson County Grand Jury during the October 1982 session for violation of § 3-1-29, Code of Alabama 1975. The indictment charges that appellant "did unlawfully own, possess, keep or train a dog or dogs with the intent that such dog or dogs be engaged in an exhibition of fighting with another dog." On March 1, 1983, appellant filed a motion to dismiss, alleging that § 3-1-29 was void for vagueness and that the section was ex post facto as applied to him. The trial court overruled these motions. On March 2, 1983, a jury found appellant guilty as charged in the indictment. Subsequently, the trial court imposed a suspended sentence of one year and a day, and placed appellant on probation for a term of two years. Appellant was further ordered to make restitution to the circuit court for and on behalf of the Birmingham Humane Society in the amount of $2,519.00. This appeal followed.
 I
Appellant first contends that § 3-1-29 is void for vagueness and therefore unconstitutional. In Williams v. State,462 So.2d 771 (Ala.Cr.App. 1984), this court determined this exact issue against appellant's position by holding that § 3-1-29 is not unconstitutionally vague. However, we take this opportunity to further discuss our holding in Williams.
The statute here in question, § 3-1-29, reads in pertinent part, as follows:
"(a) It shall be a Class C felony for any person:
 (1) To own, possess, keep or train any dog with the intent that such dog shall be engaged in an exhibition of fighting with another dog."
Appellant relies on Carter v. State, 243 Ala. 575, 11 So.2d 764
(1943), and Bolin v. State, 266 Ala. 256, 96 So.2d 582 (1957).
In Carter, the statute under consideration, provided:
 "Any person, firm, corporation or association of persons who, without a just *Page 1199 
cause or legal excuse, wilfully or wantonly does any act with the intent or with reason to believe that such act will injure, interfere with, hinder, delay, or obstruct any lawful business or enterprise, in which persons are employed for wages * * * shall be guilty of a misdemeanor." 243 Ala. at 576, 11 So.2d at 765.
The court held:
 "The misdemeanor is left to stand not upon the result or effect of the act but upon `the intent or with reason to believe that such act will injure, interfere with, hinder, delay, or obstruct,' a lawful business or enterprise. Otherwise stated, the mental attitude of the actor, which may have no effect at all, is the sine qua non of the misdemeanor.
". . . .
 "This statute goes deeper than to punish one for what he may express in words. It seeks to punish one for what he thinks or believes, regardless of the potency or impotency of the act prompted by thought or belief, to accomplish the result intended or believed to follow such act. This is a legislative abuse of the police power of the state." 243 Ala. at 576, 11 So.2d at 765-766.
In Bolin, the statute, in pertinent part, prohibited "any person or persons to have in their possession for the purpose of making . . . any stink bomb . . . [or] any of the ingredients necessary or commonly used in making . . . such stink bomb." Bolin, 266 Ala. at 257, 96 So.2d at 584. The court, relying on Carter, held that provision of the statute to be unconstitutionally vague, and stated, "We have not yet reached the dizzy heights — we hope — of sophistical constitutional interpretation to hold that one can be punished for what he `intends' or `purposes' to do." Id.,266 Ala. at 261, 96 So.2d at 587.
In response to Bolin, the Alabama Legislature enacted §13A-7-27 and § 13A-7-28 in order to remove the "constitutional defect by specifying specific criminal acts that fall within the purview of the sections." Commentary, § 13A-7-27 and §13A-7-28, Code of Alabama 1975. The stink bomb provision, §13A-7-28, presently reads:
 "A person commits the crime of criminal possession of noxious substances if he possesses, manufactures or transports any stink bomb, device, irritant, offensive-smelling or injurious substance, and intends that the injurious article or substance be used in the commission of any crime." (Emphasis added.)
Other statutory provisions which include a similar intent provision may be found at § 13A-7-8 (possession of burglar's tools) and § 13A-7-44 (criminal possession of explosives). InFarris v. State, 432 So.2d 538, 539 (Ala.Cr.App. 1983), Presiding Judge Bowen held that § 13A-7-44 was not void for vagueness, distinguishing Bolin and Carter. Judge Bowen stated that in Bolin, "the statute punished the intention to make a stink bomb regardless of how the maker intended to use the bomb." Id. Section 13A-7-44 requires the State to prove that the defendant "intends that the explosive be used in the commission of a crime involving violence to another person or destruction of another's property." It was therefore the legislature's narrowing of the intended purpose for which the materials were to be used that cured the defects of Bolin, according to Farris.
In the case sub judice, we are confronted with a similar statutory provision which appears to rely on the "intent" provision to make otherwise innocent conduct criminal. Here, the State must prove that an accused owns, possesses, keeps, or trains a dog "with the intent that such dog shall be engaged in an exhibition of fighting with another dog." Ala. Code § 3-1-29
(1975). Otherwise innocent conduct is protected in that minimal guidelines have been established to aid law enforcement officials and triers of fact in determining what conduct to is prohibited. Smith v. Goguen, 415 U.S. 566, 573, 94 S.Ct. 1242,1247, 39 L.Ed.2d 605 (1974). This statute also "satisfies the requirement of due process because it conveys a sufficient and definite meaning and warning as to the proscribed conduct when measured by common understanding *Page 1200 
and practice." Farris, 432 So.2d at 539. See also McCrary v.State, 429 So.2d 1121 (Ala.Cr.App. 1982); Jordan v. State,411 So.2d 816 (Ala.Cr.App. 1981).
 II
Appellant contends that § 3-1-29 is unconstitutional as being applied ex post facto to him. In order to understand appellant's contention, a review of the pertinent facts is in order.
Section 3-1-29 became effective on May 4, 1982. Two days later, May 6, 1982, Officer Bill Carter, an animal cruelty investigator from the Jefferson County Sheriff's Office, visited appellant under the pretext of seeking to purchase a "fighting dog." Subsequently, based on what Carter had observed on May 6, 1982, a search warrant was issued and Carter returned to the premises and confiscated appellant's five pit bulldogs, three rabbits, and a "training wheel." Appellant argued at trial and in brief on appeal that the State's proof of his "intent" to fight dogs came solely from facts and circumstances occurring prior to the effective date of § 3-1-29, i.e., prior to May 4, 1982. Appellant asserts that "nowhere in Bill Carter's testimony does he state that any representations were made by defendant that he had any design or intent to engage these dogs in dog fighting exhibitions."
Carter testified that he observed five pit bulldogs, held on individual chains, in appellant's backyard. Carter testified on direct examination as follows:
 "Q. Okay. Did he show you any of the dogs off of the chain? Did he release any of them from the way they were moored out there in the back yard?
". . .
 "A. He released one dog, Mau Barker. . . . And of course, he made a statement at that time.
"Q. What was that statement, please, sir?
 "A. Pardon me, ladies, `I am going to show you one fast motherfucker.'
". . .
"Q. What transpired next, please, sir?
 "A. All right. Mau Barker was taken to [the other dog] Shadow. Of course, they were trying to get to each other. And he had Shadow in this motion here like that. (indicating) And then he released Shadow and Shadow charged. And the other dog — I'm sorry, Mau Barker charged. And then Shadow charged. And they just more or less met like that. (indicating)
"Q. After they met, what happened?
 "A. All right. Mau Barker, the red dog, grabbed Shadow, the black dog, right in the nose. And blood just flew. He dug real deep in his nose. And then Mau Barker got ahold of Shadow's — I may be wrong — right front leg like this and bit real deep into it. And he was shaking.
"Q. How long did this go on?
"A. Not too long, 30 or 40 seconds.
 "Q. And then what happened? What, if anything, did Mr. Jones do at this time?
 "A. Well, released the dog. He released the grip on the dog.
"Q. And how did he do that?
 "A. Well, I assisted him with that. You have to put a stick in their mouth and twist it to get them out.
"Q. What was done with Mau Barker after that?
"A. Taken back to her chain.
". . .
 "Q. Did it appear to you an accident when these two dogs latched onto each other?
". . .
"A. No, sir. It was not an accident.
". . .
 "Q. Tell us how it came to be that they latched onto each other.
 "A. Well, he walked up to Shadow and released Mau Barker to fight Shadow, and they fought.
"Q. Did he attempt to stop it for a while?
"A. No, sir. They went for about 30 or 40 seconds. *Page 1201 
"Q. At that time, did he attempt to stop it?
"A. Yes, sir.
"Q. What was he doing while they were fighting?
"A. We were watching them."
Appellant testified on his own behalf that a fight did occur while Carter was present; however, according to appellant, this was an accident. Appellant stated that he was showing Carter that Mau Barker would not fight when Shadow (appellant stated that Shadow did not belong to him) "grabbed Mau Barker by the foot." Appellant testified that he held Mau Barker while a third party held Shadow and Shadow released her grip after about ten seconds. According to appellant, no such fight as that described by Carter occurred.
We think the testimony of Carter was sufficient for the jury to conclude that appellant owned, possessed, kept, and/or trained these dogs after the effective date of the statute with the intent that the dogs be engaged in an exhibition of fighting with another dog. The testimony of Officer Carter clearly established that appellant caused these dogs to fight with, and injure, each other while he was present on May 6, 1982.
We therefore hold that appellant's ex post facto claim is without merit. There was sufficient evidence before the jury to convict appellant of his activities which occurred after the effective date of § 3-1-29. The facts of this case are therefore distinguishable from Williams v. State, 462 So.2d 771
(Ala.Cr.App. 1984).
 III
At trial, the State presented evidence concerning the condition of the dogs when confiscated from appellant. The State called Dr. Stephanie Phillips, a veterinarian from the Birmingham Humane Society, and Mr. John Bodie, the director of the Birmingham Humane Society, who both testified as to the poor conditions of the dogs and their vicious propensities exhibited while lodged at the Birmingham Humane Society animal shelter. Appellant contends that this testimony was of no probative value and its only purpose was to inflame the passion of the jury and that it was therefore highly prejudicial to appellant. Appellant cites us to no authority in support of this contention of error.
The test for relevancy has been clearly stated in C. Gamble,McElroy's Alabama Evidence, § 21.01 (1) (3d ed. 1977), as follows: "Fact A is relevant if there is any logical relationship between it and the ultimate inference B for which it is offered." This test is described in McElroy's as the liberal test under which "a fact is admissible if it has any probative value, however slight, upon a matter in the case."Id.
In the case sub judice, the testimony of Dr. Phillips and Mr. Bodie concerning the dogs' conditions and propensity for viciousness, was relevant to prove the issue of intent to fight the dogs. Dr. Phillips testified that the dogs were dehydrated and undernourished; she specified what various wounds appeared on each dog, if any; and she stated that dog under 24122 had "scars of varying degrees of healing on the entire body, primarily, especially the face." Mr. Bodie testified that the dogs were a maintenance problem for the shelter because they escaped from their pens to fight other dogs; they tore their pens up, requiring reinforcement of the pens; and an employee had been bitten by one dog. Appellant suggests that this evidence may indicate that the dogs "had in the past engaged in dog fighting," but that it has no probative value as to any illegal activity after May 4, 1982. We disagree and hold that this evidence was relevant to the issue of appellant's intent to fight the dogs, just as evidence of the dogs' passive behavior and unblemished condition would be relevant to disprove such an intent.
We now turn to appellant's claim of prejudice and quote from our recent decision of Spellman v. State, 473 So.2d 618
(Ala.Cr.App. 1985), wherein we stated:
 "It is generally recognized in Alabama and elsewhere that the trial court may exclude evidence, even though it is relevant, *Page 1202 
when it would serve comparatively little or no purpose except to arouse the passion, prejudice, or sympathy of the jury. . . . Whether such evidence should be excluded because of its prejudicial nature is largely within the discretion of the trial court. . . . The trial court is afforded broad discretion in its determination of the admissibility of evidence and this determination will not be disturbed absent a clear showing of abuse. . . . The primary aim of the prejudice rule is to prevent jury misdecision."
(Citations omitted.) We find no abuse of the trial court's discretion in the case at bar.
 IV
Appellant next contends that the trial court erred in allowing the State to introduce evidence gained through an illegal search. On May 11, 1982, Officer Carter and others, proceeded to appellant's home to execute a search warrant by searching appellant's home and the surrounding premises. Upon arrival, it was determined that no one was home and entry was effected by opening a window and unlocking the front door.
Appellant relies on § 15-5-9 (requiring that an officer knock and announce his purpose prior to forcible entry), contending that the officers violated this provision because appellant was not notified prior to entry. This contention has been resolved against appellant in Diamond v. State, 363 So.2d 109, 112
(Ala.Cr.App. 1978), wherein this court held that § 15-5-9 "does not prohibit officers executing a warrant from forcing an entrance into a house which is unoccupied. . . ." and said, "The constitution does not require that the occupant be present before his home can be searched under a valid search warrant."
 V
Officer Carter testified that while he was posing as a prospective purchaser of pit bulldogs, appellant produced an album of photographs. The photographs included photos of fighting dogs, some dead and some alive; photos of actual dog fights; and a picture of a dog which had been killed by one of appellant's dogs. When Officer Carter returned with a search warrant, he was unable to locate this album or the pictures contained therein. Appellant stated at trial that no such album or pictures ever existed.
At trial and on appeal, appellant contends that allowing Officer Carter to testify about these pictures violates the best evidence rule. Appellant maintains that the best evidence of the existence of these pictures, is the pictures themselves.
In Callahan v. Booth, 275 Ala. 275, 277, 154 So.2d 32, 35
(1963), the Alabama Supreme Court stated: "An ordinary photograph is the best evidence of what is shown thereby, and parol evidence is generally inadmissible to prove what is shown by a photograph." In Callahan, the photograph at issue was in evidence when questions were asked. In the case sub judice, the State clearly showed that a thorough search of appellant's premises did not produce the photograph album. When the album was last seen, according to Officer Carter, it was in the possession of appellant.
The general rule in this state is that if the original is in the possession of the party's opponent, "the party is not entitled to prove the contents thereof by secondary evidence unless he has given notice to produce the original at the upcoming trial." C. Gamble, McElroy's Alabama Evidence, § 216.01 (1) (3d ed. 1977). In criminal cases, however, this rule does not apply when the defendant has possession of the original, and secondary evidence may be introduced without regard to notice. McElroy's § 216.04 (1). See also Dean v.State, 240 Ala. 8, 197 So. 53 (1940), explaining reasons for this exception. Furthermore, if the original is shown to have been in the defendant's possession and he denies it ever existed, secondary evidence is admissible without regard to the notice requirement. McElroy's § 216.05. See also Howton v.State, 391 So.2d 147 (Ala.Cr.App. 1980). *Page 1203 
Under the facts of this case, the testimony of Officer Carter was properly admitted as secondary evidence of the contents of the photographs. The photographs were unavailable to the State; they were last seen in appellant's possession and appellant denied the photographs existed. We find no error in the trial court's ruling. See Heinz v. Heinz, 73 Cal.App.2d 61,165 P.2d 967, 970 (1946). (where the court held that secondary evidence of the content of photographs was properly admitted, since the photographs were beyond the territory of the State and therefore considered lost documents.)
 VI
Appellant's final contention is that the trial court erred in overruling his objection to comments made by the prosecution during closing arguments. Appellant objected to the District Attorney's comments, stating:
 "Of course she's [appellant's wife is] not with him when he drives down to Adamsville to the pit. Of course she's not with him when he drives to Bessemer or Jasper to the pits there."
In overruling appellant's objection, the court noted that appellant testified that he had attended a dog fight in Jasper, although he denied attending dog fights in Adamsville and Bessemer. During cross-examination of appellant's wife, Ms. Dorothy Ellen Jones, she testified that she had gone to one dog fight with appellant, but that she did not know where the dog fight was held.
In Sanders v. State, 423 So.2d 348, 351-52 (Ala.Cr.App. 1982), this court stated:
 "While in argument to the jury counsel may not argue as a fact that which is not in evidence, nevertheless, he may state or comment on proper inferences from the evidence and may draw conclusions from the evidence based upon his own reasoning. Liner v. State, 350 So.2d 760, 763 (Ala.Crim.App. 1977). `Liberal rules are allowed counsel in drawing inferences from the evidence in their argument to the jury, whether they are truly drawn or not.' Liner, supra; Smith v. State, 344 So.2d 1239 (Ala.Cr.App. 1977). The prosecutor as does defense counsel, has the right to present his impressions from the evidence; he may argue every matter of legitimate inference and may examine, collate, shift, and treat the evidence in his own way. Hayes v. State, 395 So.2d 127 (Ala.Crim.App. 1980); cert. denied, 395 So.2d 150 (Ala. 1981); McQueen v. State, 355 So.2d 407 (Ala.Crim.App. 1978)."
We therefore find no error in the trial court's ruling. The comments made by the prosecution were within permissible limits of proper argument and were legitimate inferences supported by the evidence.
For the foregoing reasons this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.