BOWEN, Presiding Judge.
The appellant, Dwight Edward Morris, was convicted of two counts of failing to redeliver a leased vehicle, a violation of Ala. Code 1975, § 32-15-6. He was sentenced to three years’ imprisonment on each count, with the sentences to be served concurrently. He was also ordered to pay $2,638.60 in restitution and to pay $50 to the Crime Victim’s Compensation Fund.
I
FACTS
On September 28, 1991, The Southern Companies, Inc.,[1] entered into a lease agreement with Creative Leasing, Inc., for the lease of a 1992 Ford Explorer vehicle. The lease agreement was executed by the appellant as president of The Southern Companies, Inc., and by Fred M. Palmer as president of Creative Leasing, Inc. The relevant sections of the lease agreement are as follows:
“1. Leased Vehicles, Rental Payment and Term.
[[Image here]]
“The initial term and maximum extended term of this Agreement with respect to the vehicle shall be as specified in Lessee’s Order and shall commence on the delivery date of such vehicle. Lessee agrees to give Lessor thirty (30) days notice if it intends to lease the vehicle beyond the initial term....”
[[Image here]]
“5. Delivery and Return of Vehicles. Delivery and return of the vehicle shall be at Lessor’s place of business or as specified in Lessee’s order....
“Lessee agrees to return the vehicle at the end of the lease term, or any extension thereof, or upon earlier termination of the lease....
[[Image here]]
“10. Default. Time is of the essence of this Agreement and in the event that Lessee fails to pay in full on the date due any rental payment due hereunder, or defaults in the performance of any of the other terms, conditions and covenants contained herein, or in the event of Lessee’s bankruptcy or insolvency, or if the leased vehicles be levied upon or encumbered in any way, or if at any time, in the exclusive judgement of Lessor, his rights in the *982 leased vehicles in any way shall be prejudiced or rendered insecure, Lessor shall have the right to take immediate possession of the vehicles wherever found, with or without process of law, and to terminate the lease with the respect to such vehicles, and Lessee expressly authorizes Lessor and its agents to enter on any premises where the vehicles may be found for the purpose of repossessing such vehicles, and expressly waives any further interest in the vehicles and any right of action arising out of such entry and repossession. Lessor shall not be liable in damages for any termination pursuant to this paragraph. Lessee shall, however, upon termination pursuant to this paragraph be immediately responsible for the payment of all amounts due under the lease agreement through the date of termination....”
[[Image here]]
“12. General and Miscellaneous_
[[Image here]]
“Any notice given by one party to the other under this Agreement shall be given in writing at the address of the other party set out in Lessee’s Order, or at such other address as may have been furnished in writing for such purpose.”
State’s Exhibit 1, C.R. 47-49.
As provided in the “vehicle lease order,” which was expressly incorporated by reference into the lease agreement, the initial term of the lease was 36 months and 2 days. The monthly rental amount of $501.02 was due the first day of every month. Payments not received by the fifteenth of each month were to be considered delinquent. The vehicle lease order also provided: “At termination vehicle to be returned to 218 Skyland Blvd. E., Tuscaloosa, Alabama 35405.” C.R. 45.
The appellant took possession of the vehicle on September 28,1991. At that time, the appellant paid Creative Leasing $829, which included the prorated rental amount for September, the October payment, and a security deposit of $300. R. 39. Fred Palmer testified that the appellant failed to make the payment due November 1, 1991, and that, on November 22, 1991, Creative Leasing sent the appellant a letter by regular mail notifying him that his November payment was past due. Creative Leasing did not terminate the lease or demand the return of the vehicle in this letter. State’s Ex. 7.
Palmer stated that the appellant failed to remit the payment due on December 1, 1991, and that Creative Leasing mailed a second letter to the appellant on December 5, 1991. This letter, which was also sent by regular mail, advised the appellant that his November payment had not been received and was therefore delinquent and that if his December payment was not received by December 15, it too would be delinquent. This letter also informed the appellant that Creative Leasing had received his personalized license plate and that he should come pick it up or send someone to do so. Again, Creative Leasing did not exercise its option to terminate the lease and did not demand the return of the vehicle. State’s Ex. 8.
Creative Leasing did not receive the payments due under the lease and, on December 20, 1991, it sent a third letter to the appellant. This letter, which was sent by registered mail, stated, in pertinent part:
“This letter is to inform you that Creative Leasing, Inc., has found you in default of your lease agreement on the 1992 Ford Explorer leased under Customer Number 3363, Reference Number 619. Since you are in default of the contract, we are terminating the lease as of December 20,1991 and in accordance with your contract, we are placing demand on you to return the vehicle to Creative Leasing, Inc., 218 Sky-land Blvd. E., Tuscaloosa, AL 354.05, no later than 12:00 noon, December 30, 1991. If you have not returned the vehicle by that time, the unit could be considered to be converted.”
State’s Ex. 9 (emphasis added). It is undisputed that the registered mail receipt was postmarked December 20, 1991, but that the return receipt shows that the letter was not delivered to the appellant until January 8, 1992. Each of the three letters that Palmer testified he mailed was addressed to “Skip Morris, The Southern Companies, P.O. Box 7962, Midfield, AL 35228.” This post office *983 box appears as the address of the lessee on the vehicle lease order.
Palmer testified that on January 2, 1992, he located the appellant and the vehicle at a mobile home located at lot 50, Pinson Valley Trailer Park. Palmer stated that he explained to the appellant that the payments due under the lease were delinquent and that he had come to repossess the vehicle. According to Palmer, he personally handed the appellant a copy of the December 20 letter and a copy of the applicable statute and told the appellant that he could be arrested if he did not surrender the vehicle. Palmer testified that the appellant read the letter and offered to write a personal check for the payments that were past due, but Palmer said that he declined the offer. The appellant then refused to surrender the vehicle to Palmer.
On the afternoon of January 3,1992, Palmer swore out a warrant for the appellant’s arrest. The appellant was arrested in Birmingham on January 10, 1992.
The appellant testified in his own behalf. He indicated that, at the time the lease was entered into, he had informed Palmer that because of the nature of The Southern Companies’ business, operating funds would be tied up for several months at a time. According to the appellant, he “agreed to pay two months up front and then ... give [Palmer] a check ... dated for January the 1st, and then on February the 1st, [he] would pay three months at a time.” R. 94. He denied receiving the first two letters from Creative Leasing.
The appellant stated that when Palmer came to the trailer park on January 2, Palmer told him “that he had made a mistake in the paperwork on the thing and that he needed $3,000 more,” R. 98, and that “if he didn’t get the $3,000 ... he would have [the appellant] arrested,” R. 112. The appellant denied that Palmer requested the return of the vehicle at that time. He also denied that Palmer gave him a copy of the December 20 letter. According to the appellant, his postdated check (apparently the check dated January 1) was not cashed and he first knew that the lease payments were past-due on January 8, 1992, when he received the December 20 letter. He stated that the day after he received that letter, he went to Creative Leasing’s office and attempted to pay the amount due, but the secretary told him that Palmer was not in the office and that she had been instructed “not to take anything.” R. 99.
DISCUSSION
Section 32-15-6, Ala.Code 1975, provides, in pertinent part:
“Any person[2] who, after hiring, leasing or renting a motor vehicle under an agreement in writing, which provides for return of said vehicle to a particular place, or at a particular time ... shall fail to return the vehicle to said place within the time specified, and is thereafter personally served with a written demand, or upon whom written demand is thereafter made by registered mail, to return said vehicle to the place specified in the written agreement within A8 hours from the time of the personal service or service by registered mail of such demand, and who fails, except for causes beyond his control to return said vehicle to the lessor within said period, is guilty of a Class C felony....”
(Footnote and emphasis added.)
The indictment against the appellant contained four counts, each alleging a violation of this section. The verbiage of each count is identical except for the date the agreement allegedly provided for the return of the leased vehicle. Each count charged that the appellant
“did, after hiring, leasing or renting a motor vehicle, to-wit: a 1992 Ford Explorer truck, ... the property of, to wit: Creative Leasing, Inc., ... under an agreement in writing which provided for return of the said vehicle to a particular place, or at a particular time, to wit: [November 20, 1991 (Count I); December 20, 1991 (Count *984 II); December 30,1991 (Count III); January 2, 1992 (Count IV) ], unlawfully abandon, secrete, convert, sell or attempt to sell the said vehicle or any part thereof, or fail to return the said vehicle within the time specified, after service of a written demand to return the said vehicle to the place specified in the said written agreement within forty-eight (48) hours from the time of the said service, in violation of Section 32-15-6 of the Code of Alabama.”
C.R. 2-3, 34^35. The jury acquitted the appellant of the charges in Counts I and II and convicted the appellant of the charges in Counts III and IV.
The appellant contends that the facts of this case do not fall within the purview of the statute. He argues that neither December 30, 1991 (Count III), nor January 2, 1992 (Count IV), was “a ‘particular time’ provided for in the lease agreement or a ‘time specified’ in the lease agreement for the return of the vehicle.” Appellants brief at 1 (Count III), 11 (Count IV). He maintains that “[t]he phrase ‘time specified’ [as used in the statute] contemplates an exact definite return date that is ascertainable within the four corners of the lease agreement at the time the agreement is entered into.” Appellant’s brief at 2. We disagree.
Initially, we observe that the offense defined in § 32-15-6 has three elements: (1) The lease of a vehicle under a written agreement providing “for return of said vehicle to a particular place, or at a particular time”; (2) the failure to return that vehicle “to said place and within the time specified”; and (3) the failure to return the vehicle within 48 hours after service of a written demand to do so.[3] Although the second element does not expressly refer to the written agreement, the use of the phrases “said place” and “time specified” can only be meant as references to the “particular place” and “particular time” contained in the written agreement required for the first element.
We note that the disjunctive language in the first element — requiring a written agreement providing “for return of said vehicle to a particular place, or at a particular time” — is at odds with the conjunctive language in the second element — the failure to return that vehicle “to said place and within the time specified.” Under the first element, the written agreement need specify only a place for the return or a time therefor. However, the second element clearly requires that the agreement specify both a place and time for the return. In such a situation, we may construe the disjunctive conjunction “or” in the first element as the conjunctive conjunction “and.” See generally Ex parte Jordan, 592 So.2d 579, 581 (Ala. 1992); In re Opinion of the Justices No. 93, 252 Ala. 194, 41 So.2d 559, 563 (1949). Cf. State v. Steel City Crane Rental, Inc., 345 So.2d 1371, 1374 (Ala.Civ.App.1977) (in construing taxing statute, which must “be construed against the taxing power and in favor of the taxpayer,” disjunctive conjunction “or” would be construed as conjunctive conjunction “and”). This construction serves to eliminate the conflict between the first and *985 second elements of the offense. It is also consistent with the language of similar statutes in other states. See 720 ILCS 5/16 — 3(b) (West Smith-Hurd 1993) (defining offense as leasing a vehicle or other personal property “under an agreement in writing which provides for the return of the vehicle or other personal property to a particular place at a particular time,” “without good cause wilfully fail[ing] to return the vehicle ... within the time specified” and, after service of a written demand to return the vehicle, “without good cause wilfully fail[ing] to return the vehicle”); Mo.Ann.Stat. § 578.150(1) (Vernon Supp. 1994) (defining offense as “with the intent to deprive the owner thereof, ... purposefully failing] to return leased or rented personal property to the place and within the time specified in an agreement in writing providing for the leasing or renting of such personal property”); Or.Rev.Stat. § 164.140(l)(a) (1990) (defining offense as “[a]fter renting an item of personal property ... under a written agreement which provides for the return of the item to a particular place at a particular time, ... failing] to return the item as specified, [and after being] served by mail with a written demand to return the item, ... knowingly failing] to return the item within 10 business days from the mailing of the demand”); Wash.Rev.Code Ann. § 9A.56.095(l)(a) (West 1988) (defining offense as “[a]fter renting machinery, equipment or a motor vehicle under an agreement in writing which provides for the return of said item to a particular place at a particular time, failing] to return the item to said place within the time specified, [and after being] served ... with a written demand to return said item within seventy-two hours from the time of the service of such demand, ... wilfully neglecting] to return said item ... within five full business days from the date of service of said notice”).
The lease agreement in the present case clearly provided for the vehicle to be returned at a “particular place” — 218 Sky-land Boulevard E., Tuscaloosa, Alabama. Paragraph 10 of the lease agreement clearly provided that the lessor had the option to unilaterally terminate the lease in the event the lessee defaulted by not making the rental payments when due or in any other manner.
The lease agreement also provided a “particular time” for the return of the vehicle even though when the lease agreement was executed that particular time was not a set date. The lease agreement identified the “particular time” as precisely as possible, providing that “in the event that Lessee fails to pay in full on the date due any rental payment due hereunder, ... Lessor shall have the right to take immediate possession of the vehicles wherever found ... and to terminate the lease with respect to such vehicles.” By not returning the vehicle upon request after failing to make the rental payments as scheduled and after having received proper notice, the appellant violated both the terms of the lease agreement and § 32-15-6. We think this construction afforded the appellant reasonable notice and comports with common sense and fair play.
We note that § 13A-1-6 provides:
“All provisions of this title shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in Section 13A-1-3.”
Although § 32-15-6 is not within Title 13A, the Criminal Code, it is clearly a criminal statute. We find instructive the commentary to § 13A-1-6:
“The rule laid down by this section places the construction of penal laws ‘according to the fair import of their terms.’ ‘We agree to all the generalities about not supplying criminal laws with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean.’ Justice Holmes, Roschen v. Ward, 279 U.S. 337, 339 [49 S.Ct. 336, 336, 73 L.Ed. 722] (1928).
“The original draft expressly abolished the common law rule that penal laws are to be strictly construed, U.S. v. Wiltberger, 18 U.S. ([5] Wheat.) 76 [5 L.Ed. 37] (1820), a feature of many modern penal codes, e.g., New York Penal Law § 5.00, Michigan Revised Criminal Code § 115, Proposed Texas Penal Code § 1.05. The premise was that under the artificial rule of strict construction courts sometimes have taken the narrowest possible view of the lan *986 guage used by the legislature which occasionally results in the acquittal of offenders who are clearly within the letter and spirit of the law. ‘A more serious result is that (federal) criminal law has been made intolerably cumbersome, as the legislative draftsman has sought to anticipate every possible narrow construction.... A strict construction rule had greater merit in former times when the main responsibility for formulating English criminal law lay in the judiciary as a matter of common law. In those circumstances legislation could be regarded as an exceptional intrusion into the main body of judge-made law. There was no systematic code. But when the legislature has assumed responsibility for a comprehensive, integrated Criminal Code, it is not appropriate for the courts to presume that only the least possible alteration of a body of nonstatutory law was intended.’ Working Papers, Proposed New Federal Criminal Code, p. 5.
“Actually, the old rule of strict construction is practically meaningless as it is seldom cited and then only to support a conclusion already reached by reference to the fair meaning of the words and phrases used in the statute and a consideration of the legislature’s intent. Franklin v. State, 275 Ala. 92, 152 So.2d 158 (1963) (condemnation statute is highly penal and is strictly construed; that is, its enforcement is not to be extended beyond the letter of the law).
“In drafting the Proposed New Federal Criminal Code, the commissioners recognized that while modern courts seldom follow the rule of strict construction of criminal laws, an explicit repeal of the rule was unnecessary, and a general statement was used integrating the intended rule of construction of the Code provisions with a statement of general purposes. Comment § 102, General Purposes, p. 103. Cf. Model Penal Code § 1.02 for similar treatment.
“Under this section, not only must the alleged misconduct be covered by ‘the fair import’ of the Criminal Code provisions, but also, under section 13A-1-3, the statute must be construed so that it gives ‘fair warning of the nature of the conduct proscribed and the punishment authorized upon conviction,’ which is consistent with the constitutional requirement that punishment is authorized only for conduct which has previously been proscribed with fair warning to persons of ordinary intelligence and understanding. Rake [Rabel v. Washington, 405 U.S. [313] 314 [92 S.Ct. 993, 993-94, 31 L.Ed.2d 258] (1972); Bouie v. Columbia, 378 U.S. 347 [84 S.Ct. 1697, 12 L.Ed.2d 894] (1964); United States v. Earns [Harriss], 347 U.S. 612 [74 S.Ct. 808, 98 L.Ed. 989] (1954); Boyce Motor Lines, Inc. v. United States, 342 U.S. 337 [72 S.Ct. 329, 96 L.Ed. 367] (1952); Bolin v. State, 266 Ala. 256, 96 So.2d 582 (1957); Connor v. City of Birmingham, 36 Ala. App. 494, 60 So.2d 474, cert. denied, 257 Ala. 588, 60 So.2d 479 (1952).”
We have found no cases in other jurisdictions with comparable statutes[4] involving early termination of a lease for a default in rental payments. We conclude that § 32-15-6 is applicable to the fact situation involved here. However, we do note that both Oregon and Washington, which have statutes very similar to § 32-15-6 (see Or.Rev.Stat. § 164.140(a) (1990); Wash.Rev.Code Ann. § 9A.56.095(l)(a) (West 1988)), have also passed separate statutes to cover default in payment situations.[5] The judgment of the trial court is affirmed as to this issue.
*987 II
However, we must remand this cause with instructions that one of the appellant’s convictions be set aside. The trial court acknowledged that the appellant had committed only one criminal act. Therefore the appellant can receive only one sentence. At sentencing, the trial court stated:
“[l]et me clarify for purposes of the record that with respect to the sentence imposed in this case, the three-year sentence would be with respect to both Counts III and IV of the indictment as presented. That is, I do not consider them to be separate offenses, but rather the offense was covered and described by both Counts III and IV of the indictment.... this sentence ... will be stated and described in the judgment entry as one single offense.”
Supp.R. 11-12.
The trial court’s sentencing order stated: “[T]he Court fixes his punishment at imprisonment in the penitentiary of the State of Alabama for a term of three years as to each of the two counts of the indictment with respect to which the jury found the defendant guilty and the Court heretofore adjudged him guilty, but orders that said sentences shall run concurrently and, further, inasmuch as said verdicts and adjudications of guilt all relate to one transaction, the Court finds, adjudges and declares that the conviction should be considered as constituting only one conviction for any future purposes of analysis, such as under the Alabama Habitual Felony Offender Act.”
C.R. 42.
The Double Jeopardy Clause “ ‘protects against multiple punishments for the same offense.’ ” Hunt v. State, 659 So.2d 938, 959 (Ala.Cr.App.1994). Although the trial judge ordered that the sentences be served concurrently, the appellant was given two sentences for what was clearly one conviction for one offense: the appellant leased one vehicle and failed to return one vehicle.
To avoid possible confusion regarding the appellant’s status as an inmate or the application of the Habitual Felony Offender Act, we are remanding this cause to the trial court with instructions to set aside one of the appellant’s convictions and the sentence relating to that conviction.
“ ‘If a verdict responds in substance to every material fact involved in the issues in the cause, although it may be irregular or imperfect as to form, the court may correct the imperfections either with or without the consent of the jury.
[[Image here]]
“... [Wjhere the language of judgments or verdicts can be reasonably interpreted by reference to the ... instructions of the court, then on such a basis intendments are indulged in favor of judgments.”
Alabama Farm Bureau Mut. Cas. Ins. Co. v. Williams, 530 So.2d 1371, 1376-77 (Ala.1988).
This cause is remanded with directions. Proper return shall be made to this Court within 28 days from this date.
REMANDED WITH DIRECTIONS.
All Judges concur.

. The Southern Companies, Inc., is apparently a small corporation once engaged in the sale of long-distance telephone service access and is not to be confused with Southern Company Services, Inc., the parent company of Alabama Power Company.

. As used in this section, "person” is defined as "[e]very natural person, firm, copartnership, association or corporation.” Ala.Code 1975, § 32-1-1.1(42). The propriety of the appellant’s conviction under this section on the basis of a lease entered into by a corporation is not raised in this appeal. Consequently, that issue is expressly not addressed by this Court.

. While the statute does not contain a specific intent requirement, that particular aspect of the statute is not challenged by the appellant. Compare Kennedy v. State, 640 So.2d 22, 30 (Ala.Cr. App.1993) (criminal statute challenged as unconstitutionally vague on the ground that it "penalizes non-culpable conduct because the statute requires no criminal intent”). We do note that a number of states that have enacted statutes criminalizing the failure to return a leased vehicle penalize only the intentional or willful failure to return a vehicle. E.g., Cal. Veh.Code § 10855 (West 1987) (defining offense as "wilfully and intentionally fail[ing] to return the vehicle to its owner within five days after the lease or rental agreement has expired"); 720 ILCS 5/16-3(b) (West Smith-Hurd 1993) (defining offense as "without good cause wilfully failing] to return the vehicle ... within the time specified” and, after service of a written demand to return the vehicle, "without good cause wilfully fail[ing] to return the vehicle”); La.Rev.Stat.Ann. 14:220(A) (West 1986) (defining offense as "with fraudulent intent willfully refusing] to return the leased vehicle to the lessor after the expiration of the lease term as stated in the lease contract"); Mo. Ann.Stat. § 578.150(1) (Vernon Supp.1994) (defining offense as “with the intent to deprive the owner thereof, ... purposefully failing] to return leased or rented personal property to the place and within the time specified in an agreement in writing providing for the leasing or renting of such personal property”); Nev.Rev.Stat.Ann. § 205.312 (Michie 1992) (defining offense as "willfully and intentionally fail[ing] to return the vehicle to its owner within 72 hours after the lease or rental agreement has expired").

. Although a number of states have enacted statutes criminalizing the failure to return a leased vehicle, the statutes are not uniform. Some states clearly limit the offense to the failure to return the vehicle at the expiration of the lease term. E.g., Cal. Veh.Code § 10855 (West 1987) (defining offense as failure to return vehicle "within five days after the lease or rental agreement has expired”); La.Rev.Stat.Ann. 14:220(A) (West 1986) (defining offense as failure to return vehicle "after the expiration of the lease term as stated in the lease contract"); Nev.Rev.Stat.Ann. § 205.312 (Michie 1992) (defining offense as failure to return vehicle "within 72 hours after the lease or rental agreement has expired”). The statutes just cited do not require a demand for the return of the vehicle and a subsequent failure to return it. As noted earlier in this opinion, there are several statutes that define the offense in terms similar to § 32-15-6.

. Section 164.140(l)(b), Or.Rev.Stat. (1990) criminalizes the following conduct:
"After leasing an item of personal property from a commercial lessor of personal property *987 under a written agreement which provides for periodic lease payments, the person fails to pay the lessor a periodic payment when due for a period of 45 days, is thereafter served by mail with a written demand to return the item, and knowingly fails to return the item within 10 business days from the date of mailing of the demand.”
The following conduct is an offense under Wash. Rev.Code Ann. § 9A.56.095(l)(b) (West 1988):
"After leasing machinery, equipment, or a motor vehicle under an agreement in writing which provides for periodic rental or lease payments for a period greater than six months duration, [one] fails to pay the lessor of said item the periodic payments when due for a period of ninety days, is thereafter served ... with a written demand to return the item to ... the lessor within seventy-two hours from the time of the service of said demand and wilfully neglects to return said item ... within five full business days from the date of service of said notice.”