[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 826 
This is an appeal from the denial of the defendant's petition for writ of error coram nobis. Two major issues are presented on appeal.
On October 31, 1977, the defendant pled guilty to the offenses of robbery, kidnapping, rape, assault with intent to rob, and assault with intent to ravish. Although not a part of the record on this appeal, the record indicates that the defendant executed separate "Ireland" forms for each offense.Ireland v. State, 47 Ala. App. 65, 250 So.2d 602 (1971). A factual basis for accepting each plea was established through the admissions of the defendant. The trial judge fully informed the defendant of the constitutional rights that would be waived by the guilty plea, Boykin v. Alabama, 395 U.S. 238,89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and the minimum and maximum sentences of each crime. The record indicates that the guilty plea was knowingly and intelligently entered. The defendant was sentenced to consecutive terms of life imprisonment for the rape and robbery, to a term of ten years' imprisonment to run concurrently with either life imprisonment term for the kidnapping, and to consecutive terms of twenty years' imprisonment for the two assault offenses. The guilty plea was entered without any plea bargaining agreement between the State and the defendant. The State made no recommendations of sentences to the trial court. No original appeal was taken from the conviction.
 I
The defendant now contends that his guilty pleas are invalid because he was not informed by the trial judge that the sentences imposed could run either concurrently or consecutively. Further, the defendant contends that he was denied effective assistance of counsel because his retained trial counsel did not inform him of the possibility of the imposition of consecutive sentences.
At the hearing on the petition for writ of error coram nobis, the defendant's retained trial counsel, Frank W. Riggs, testified that he usually informed his clients of the possibility of consecutive or concurrent sentences although he did not remember specifically so informing the defendant.
 "I'm telling you that I have no present recollection of a particular discussion of the matter. I'm telling you it would be my usual practice and I feel very certain that I followed my usual practice in this case of informing them that there was a — that the sentences could be consecutive or they could be concurrent."
Mr. Riggs testified that he never told the defendant or any member of his family that the sentences would run concurrently even though the defendant's mother had expressed her hope that they would.[1]
The defendant's sentencing hearing was held on the seventeenth of November 1977, 17 days after he pled guilty. After the judge had sentenced the defendant for each separate offense, the Assistant District Attorney asked the judge whether the sentences were consecutive or concurrent. After the judge explained his reasons for imposing the lengthy sentences, the following occurred:
 "A MALE (never identified): Is there a difference in the life sentences that you imposed; consecutive or concurrent?
 "THE COURT: The only difference that (it) will make is that it will tell them (the Board of Pardon and Parole) that I certainly *Page 827 
think he (does not) needs to get out anywhere in the near future. That is my opinion."
Neither upon his pleas of guilty nor at his sentencing hearing did the defendant ever indicate that he would not have pled guilty if he had known his sentences could be made to run consecutively.
The function of a writ of error coram nobis is to bring to the attention of the trial court an error of fact, unknown to it or the affected party at the time of trial which would have prevented the judgment challenged had it been known. In effect, the writ serves as a motion for a new trial on the ground of newly discovered evidence. Vaughn v. State, 395 So.2d 95 (Ala. 1979); Seibert v. State, 343 So.2d 788 (Ala. 1977); Lewis v.State, 367 So.2d 542 (Ala.Cr.App. 1978), cert. denied,367 So.2d 547 (Ala. 1979); Summers v. State, 366 So.2d 336
(Ala.Cr.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979).
In a coram nobis proceeding, the petitioner bears the burden of submitting clear, full, and satisfactory proof of facts which, had they been timely submitted at trial, would have prevented judgment. The degree of proof is highly exacting as to facts and must convince the trial judge of the truth of the allegations in the petition. Summers, 366 So.2d at 343.
The writ of error coram nobis does not serve the purpose of an appeal. It is not intended to provide appellate review where the complaining party has not sought such and the time for taking such has long since expired. Thomas v. State, 280 Ala. 109, 190 So.2d 542 (1966); Mayola v. State, 344 So.2d 818
(Ala.Cr.App.), cert. denied, 344 So.2d 822 (Ala. 1977).
 A.
The defendant relies heavily upon the following language ofCooper v. State, 47 Ala. App. 178, 252 So.2d 104, cert. denied,287 Ala. 728, 252 So.2d 108 (1971).
 "This appellant was not informed and it is not shown that he understood the three constitutional rights waived by his plea of guilty, and that he understood he waived those rights by such a plea. Such waiver is part of the consequences of a plea of guilty along with whatever punishment may be imposed. In other words, the punishment imposed within the limits allowed by law is not the only consequence of such a plea. A further consequence of the plea, under the proceedings in the instant case, was whether the sentence was to run consecutively or concurrently with another sentence."
Cooper, 47 Ala. App. at 182, 252 So.2d 104.
Undeniably whether sentences are to run concurrently or consecutively is a consequence of pleading guilty. The question in this case is whether the accused must be informed that the sentences could be made to run concurrently or consecutively in accepting guilty pleas for multiple offenses in order for the pleas to be entered voluntarily and intelligently in a manner to fully satisfy the constitutional requirements of due process.
Boykin v. Alabama, supra, established that a guilty plea must be intelligently and voluntarily entered and that the record must affirmatively disclose that the accused entered his plea understandingly and voluntarily. Brady v. United States,397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Boykin requires that in order for a guilty plea to be made intelligently and voluntarily, the record must affirmatively reveal that the accused voluntarily waived his privilege against compulsory self-incrimination, the right to trial by jury and the right to confront one's accusers. Boykin, 395 U.S. at 243,89 S.Ct. at 1712.
However, Boykin did not adopt a constitutional requirement that an accused be informed of all the consequences of his guilty plea before the plea will be considered intelligently entered. For example, see United States v. Degand, 614 F.2d 176
(8th Cir. 1980), holding that the failure of the trial court to inform the defendant that any federal sentence imposed might not run concurrently with the state sentence the defendant was already serving at the time did not vitiate the guilty plea. *Page 828 
The defendant contends that the failure to advise an accused of the possibility of consecutive sentences does violence to the United States Supreme Court's holding in Boykin, supra. The Supreme Court of Arizona has refuted this allegation. In Statev. Young, 106 Ariz. 589, 480 P.2d 345 (1971), that court expressly held that the failure to advise of the possibility of consecutive sentences does not violate the principles enunciated in Boykin, supra.
 "Although the trial judge has the discretion to order concurrent sentences for two offenses both of which are independent of each other in time and space, a defendant has no right to receive concurrent sentences. Further, we are unpersuaded by claims of ignorance with respect to matters clearly obvious to the everyday layman. Both offenses for which appellant stood charged occurred on separate occasions. The most basic logic and reflection make it apparent that separate offenses merit separate punishments. Only one experienced in the law of sentencing would be aware that the trial judge has the discretion to order concurrent sentences for separate crimes and such person, of course, would have no argument if he received consecutive sentences.
 "It is clear that Boykin requires that the record indicate that defendants understand the consequences of their guilty pleas. However, this court is of the opinion that the real thrust of Boykin is that a defendant may not be permitted to give up constitutional rights unless he is aware of them and voluntarily waives them. A defendant has no constitutional right to receive concurrent sentences for two separate offenses whether the sentence is imposed pursuant to a plea of guilty or after a verdict of guilt is rendered by a jury. Even if Boykin requires that a defendant be aware of certain consequences of a guilty plea other than the giving up of constitutional rights, we are of the opinion that such a requirement would not apply to a consequence so obvious as separate punishments for separate crimes; a consequence of which the defendant must be presumed to be aware."
Young, 480 P.2d at 346-7.
Followed in State v. Gordon, 610 P.2d 59 (Ariz. 1980). Alabama Code 1975, Section 14-3-38 requires all sentences to run consecutively unless specifically stated by the trial court to run concurrently.
Following the decision announced in Young, supra, we conclude that the defendant's pleas of guilty were not vitiated by the failure of the trial court to advise the defendant that the sentences might run consecutively.
In reaching this conclusion we note that the defendant had not entered into any plea bargaining agreement with the State. Although the defendant testified at the hearing that he would not have pled guilty had he known the sentences were going to be consecutive, there is no testimony that he thought he was going to receive concurrent sentences for his crimes. While these two beliefs are related, they are not the same. Additionally, we note that the mere expectations of the defendant would not be sufficient, in and of themselves, to invalidate his pleas of guilty: "Expectation of a lighter sentence or a disappointed hope for a lesser sentence is not enough (to allow the defendant to withdraw his plea or hold such involuntary). While defendant's belief as to an anticipated sentence is necessarily subjective, the test to be applied is whether there is a reasonable basis in the guilty plea record for defendant to have had such a belief." Beattiev. State, 603 S.W.2d 42, 45 (Mo.App. 1980). See also Gill v.State, 380 So.2d 1008 (Ala.Cr.App. 1980).
 B.
Challenges based on the inadequate and ineffective assistance of counsel constitute grounds for coram nobis. Summers, 366 So.2d at 345. Counsel is presumed adequate and the fact that the petitioner was convicted does not establish incompetency or lack of zeal, especially when counsel has been retained (as in the instant case) rather than appointed. Summers, *Page 829 
366 So.2d at 341. See also Echols v. State, 276 Ala. 489,164 So.2d 486 (1964); Harris v. State, 367 So.2d 524 (Ala.Cr.App.), cert. denied, 367 So.2d 534 (Ala. 1978); Willis v. State, 42 Ala. App. 85, 152 So.2d 883 (1963).
In order to successfully establish inadequate and ineffective representation of counsel, the defendant must show that the conduct of the attorney reduced the trial or other proceedings to a farce, sham, or mockery of justice. Goodman v. State,387 So.2d 862 (Ala.Cr.App.), cert. denied, 387 So.2d 864 (Ala. 1980); Robinson v. State, 361 So.2d 1172 (Ala.Cr.App. 1978).
In McMann v. Richardson, 397 U.S. 759, 769-70, 90 S.Ct. 1441,1448, 25 L.Ed.2d 763 (1970), the Supreme Court stated:
 "(T)he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the goodfaith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
 "That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing."
In Goodman, 387 So.2d at 864, this Court quoted with approval from MacKenna v. Ellis, 280 F.2d 592 (5th Cir. 1960):
 "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance. We consider undivided loyalty . . . to client as essential to due process."
Even if we apply the standard of "reasonably effective" assistance of counsel recently adopted by the United States Court of Appeals for the Fifth Circuit, we find no violations of the defendant's Sixth Amendment right to the effective assistance of counsel.
 "Reasonably effective assistance is an easier standard to meet in the context of a guilty plea than in a trial, but counsel still must render competent service. See Tollett v. Henderson, 1973, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235. It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. Lamb v. Beto, 5th Cir. 1970, 423 F.2d 85, 87, cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84. See Walker v. Caldwell, 5th Cir. 1973, 476 F.2d 213; Colson v. Smith, 5th Cir. 1971, 438 F.2d 1075; O'Neal v. Smith, 5th Cir. 1970, 431 F.2d 646. He must actually and substantially assist his client in deciding whether to plead guilty. Walker v. Caldwell, supra, 476 F.2d at 224. It is his job to provide the accused an `understanding of the law in relation to the facts.' Id. at 218. The advice he gives need not be perfect, but it must be reasonably competent. Colson v. Smith, supra, 438 F.2d at 1081 n. 5. His advice should permit the accused to make an informed and conscious choice. Id. at 1079. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimal level." *Page 830 
Harris v. Oliver, 645 F.2d 327, 329 (5th Cir. 1981).
The record before us does not establish the burden of proof necessary to sustain the defendant's contention as to ineffective representation of counsel. Rather, if anything, it indicates that the defendant's trial counsel exercised his professional judgment in a diligent and conscientious manner. The defendant made his choice among the alternatives open to him with effective assistance of counsel. Thus, the defendant's contention on this ground is without merit.
 II
The defendant also asserts that he was denied effective assistance of counsel because his trial attorney did not file a motion to suppress his confession, and motions to challenge the validity of the pretrial identification procedures.
At the defendant's hearing on his petition Mr. Riggs stated that he was aware that the defendant had confessed to the crimes and did attempt to find some basis upon which to have the confession ruled inadmissible. He testified that the defendant "indicated to (him) that the confession had been freely given and that there'd been no coercion." In addition, Mr. Riggs stated that he "made a determination that it was extremely doubtful that we could succeed in suppressing the confession . . ." He felt that the State "had a very clear case against . . . (the defendant)." Mr. Riggs testified that he would have filed a motion to suppress the confession had it been induced by fraud or "subtle trickery" as the defendant now contends. He stated that he found "nothing to indicate that the lineup had been (in) any way involved in inducing the confession."
Mr. Riggs testified that as defendant's counsel his trial strategy was to attempt to establish a defense of insanity. In that regard he took several depositions and, after reviewing all his information, concluded that it would not sustain the burden necessary to establish the defense under Alabama law. Thus, he recommended a strategy of pleading guilty and seeking leniency on the sentences from the trial court. Consequently, he offered substantial evidence in mitigation of punishment at the sentencing hearing.
In Trammell v. State, 276 Ala. 689, 166 So.2d 417 (1964), our Supreme Court stated:
 "Trial counsel must make many decisions of an almost infinite variety in the course of a criminal trial: whether to seek a change of venue; whether to advise a plea to a lesser offense; whether to object; whether to offer a witness of probable doubtful credibility or with a criminal record; whether to advise the defendant to take the stand and subject himself to cross examination; how to argue the case to the jury; whether the jury be polled. All these and more are practical questions and very real ones. Bad judgment, or even good but erroneous judgment, may result in adverse effects. They are simple facts of trial; they are not justiciable issues in a proceeding of this kind."
Even though it can be definitely shown that trial counsel has made a mistake unfavorable to his client, that alone is insufficient to establish inadequacy of representation. Lewis, supra; Robinson, supra.
In the instant case, the evidence does not establish that the conduct of the defendant's trial counsel was inadequate and ineffective. The record evidences a diligent inquiry into several difficult issues by trial counsel who, based upon the information developed after conscientious investigation and in the exercise of his professional judgment, ascertained a reasonable course of action and strategy. In the exercise of his best judgment and with his client's consent, trial counsel pursued a strategy which now is unpalatable to the defendant. This Court will not indulge in a "trial" of this cause and the several issues involved because the defendant, after having served approximately three and one-half years in prison, now wishes he had gone to trial on the several offenses. Merely because he received the maximum punishment in each case does not mean that he *Page 831 
was represented by ineffective counsel. See Harris, supra.
 "What is at stake in this phase of the case is not the integrity of the state convictions obtained on guilty pleas, but whether, years later, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof."
McMann, 397 U.S. at page 773, 90 S.Ct. at page 1450.
We find a failure on the part of the defendant to carry his burden in overcoming the presumption of adequacy of counsel.Summers, supra; Echols, supra; Harris, supra; Willis, supra;Goodman, supra; Lewis, supra; Robinson, supra. Further, we find nothing in the record to indicate inadequacy of representation by trial counsel.
The judgment of the Circuit Court denying the petition for writ of error coram nobis is hereby affirmed.
AFFIRMED.
All Judges concur.
[1] In a letter to Mr. Riggs, the defendant's mother wrote: "Naturally, if this were possible, I would prefer to see the terms run concurrently with less time spent on the road gang."