Bill Delevie was indicted and convicted for theft of property in the first degree. He was sentenced as an habitual offender to fifteen years' imprisonment. Three issues are argued on appeal.
 I
Delevie contends that the trial judge erred in denying his motion for a continuance because of the absence of certain key witnesses who had been subpoenaed by him and who were "critical" to his defense.
On the day his case was tried, a jury was selected. Only then did Delevie move to dismiss because he had been denied a speedy trial. Upon the denial of that motion he requested a continuance.
The record shows that the "case was supposed to be resolved yesterday" on a guilty plea but the State had to withdraw the offer when it learned that Delevie had prior felony convictions. Apparently most, if not all, of Delevie's witnesses were present at that time, and defense counsel failed to inform his witnesses to return the next day. Speaking "in general" and not about Delevie "in this case necessarily", the trial judge stated, "I think there's a lot of times that these witnesses come down here and nobody says a word to them and they don't know what's going on one way or the other and that there is a lack of communication by the State with their witnesses and there is a lack of communication by the defendant with their witnesses."
The Attorney General argues that after defense counsel learned that the case would be tried he made no effort to inform the absent witnesses that they would be needed for trial the next day. There was no request for instanter subpoenas or for attachments on the original subpoenas.
The application for the continuance should have been made before the jury was impaneled and sworn. Hoppins v. State,337 So.2d 134, 138 (Ala.Cr.App. 1976). Where the ground for continuance was known in advance of such time, the application comes too late when made after the case is called for trial,Ritz v. City of Birmingham, 22 Ala. App. 653, 119 So. 596
(1929); on the morning of trial, Lamberth v. State, 48 Ala. App. 134,137-38, 262 So.2d 622 (1972); or after the jury was selected, Hoppins, 337 So.2d at 138. Defense counsel *Page 1046 
did not request the trial judge to issue any attachment for any absent witness, nor does it appear from the record that counsel made any attempt to secure the presence of the absent witnesses. "(T)he absence of a witness from the trial, . . . is no ground for continuance unless accused has exercised due diligence to obtain the attendance of the witness . . . or shows a valid excuse for its lack." 22A C.J.S. Criminal Law, Section 502 (a) (1961).
A showing was made that Jerry Dickerson and Challis Price, the absent defense witnesses, would testify that a "man on the gate was pocketing the funds at the track" and that Ed Beard, Delevie's partner, was the comptroller of the company, and handled the money and the checks. Their testimony was, for the most part, cumulative and corroborative of that given by Delevie. We recognize that some "corroborative evidence may be so clearly material and its absence so likely to work an injury to the rights of accused that the denial of a continuance to obtain such testimony will be regarded as erroneous", just as it would be error to refuse a continuance where the evidence is important and material, notwithstanding the fact that it is cumulative. 22A C.J.S. Criminal Law, Section 489 (a). However, here we apply the general rule that it is not error to refuse a continuance when the evidence or testimony sought to be introduced by the absent witnesses is merely cumulative or would simply corroborate that of a witness present and able to testify. Segers v. State, 283 Ala. 694, 220 So.2d 882 (1969).
Here, it also appears that the trial court had no subpoena power over Challis Price, although she had been personally served in Donaldsonville, Georgia.
The decision to grant or deny a continuance rests within the trial court's discretion. Ungar v. Sarafite, 376 U.S. 575, 589,84 S.Ct. 841, 849-50, 11 L.Ed.2d 921 (1964); United States v.Jimenez-Diaz, 659 F.2d 562, 567 (5th Cir. 1981), cert. denied,456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982). An appellate court will not disturb a trial judge's ruling unless the defendant shows a clear abuse of that discretion, Ungar, supra (unless decision so arbitrary and capricious that it is clear abuse of discretion), United States v. Long,674 F.2d 848, 855 (11th Cir. 1982), that results in serious prejudice.Jimenez-Diaz, supra. "Unless we conclude that the ruling of the district (trial) court was an unreasonable resolution of the various factors confronting it, we must uphold the lower court's ruling, even though it may be considered a harsh one."United States v. Barrentine, 591 F.2d 1069, 1075 (5th Cir. 1979). Here, Delevie has shown no clear abuse of discretion. Even though our finding is not based on the doctrine of harmless error, it is also our conclusion, after considering Delevie's criminal history of writing worthless checks, that the presence or absence of the absent witness would have had no effect upon the outcome of the trial.
 II
Delevie contends that the evidence does not present a prima facie case and is insufficient to support the verdict. We disagree.
The gist of the greater portion of Delevie's argument is summarized in the following statement wherein he contends "that either State's witness Ross Jones' testimony was perjured, or that he simply could not remember that the Defendant had told him to hold the check because it would not be good until after the motorcycle race." Delevie maintains that there was no showing that he obtained any property by deception.
The State proved that on September 25, 1982, Delevie gave Ross Jones a check for $1,435.70 in exchange for tee-shirts and caps. Delevie purchased the shirts and caps to sell at a motorcycle race track he was developing. He wrote the check from a "binder-type business checkbook."
This check was drawn on an account which Delevie and his partner, Ed Beard, opened on July 6, 1982, with a deposit of $100. On July 8th, $103.55 was deposited. No further deposits were made, the total of all the funds ever deposited being $203.55. *Page 1047 
From August until the account was closed, the balance was $2.20. The account was closed by the bank in October of 1982 after checks totaling $634.95 were written on the account in September. The bank refused payment on the checks for insufficient funds, charged the account $2.20 for overdraft charges, and closed the account with a zero balance. The check which is the subject of the instant conviction was received by the bank after the account had been closed.
Ross Jones testified that Delevie did not ask him to hold the check or tell him that the check would not be good until after the race. When Jones asked Delevie about the check, after payment had been refused, Delevie indicated he would make the check good but never did. Jones talked to Delevie three or four times about the bad check.
Delevie testified in his own behalf, maintaining that he told Jones to hold the check until after the race. He denied any deceit or criminal intent in obtaining the property.
Under the facts of this case, the question of whether or not Delevie knowingly obtained, by deception, control over merchandise, as the indictment charged, was an issue for the jury. The term "deception" includes failing to correct a false impression which the accused is under a duty to correct or which false impression he previously has created or confirmed. Alabama Code Section 13A-8-1 (1) (1975). The issuance of a check drawn on a closed account, even without further representation by the drawer to the recipient of the check that it is drawn on an existing account, when done with the intent to obtain and deprive another person of money or property, is a "deception" sufficient to constitute a criminal offense under a theft by deception statute. People v. Attebury, 196 Colo. 509,587 P.2d 281, 284 (1978). In a prosecution under Alabama's Worthless Check Act, "(a) showing at the trial that the check had been presented, and that payment had been refused for either of the statutory reasons, is prima facie evidence of the drawer's intent to defraud with knowledge of such deficiency."Tolbert v. State, 294 Ala. 738, 742, 321 So.2d 227 (1975). Intent is an inference which must be drawn by the jury. "That intent must be found by the jury and may be inferred from the facts and circumstances attending the whole transaction and the presence or absence of excusing or palliating facts or circumstances." Doss v. State, 23 Ala. App. 168, 180,123 So. 237 (1929) (Samford, J., concurring in result).
Here, the State presented a prima facie case of first degree theft. All the facts and circumstances presented issues which only the jury could decide.
 III
The State was properly permitted to prove that Delevie had issued other worthless checks in proving criminal intent.
Delevie testified in his own behalf and denied any intent to deceive Jones.
On cross examination, the State showed that Delevie had been convicted of twenty-one cases of "negotiating worthless negotiable instruments" within the past two years and had been sentenced to seven and one-half years' imprisonment.
On further cross examination, the prosecutor was allowed to introduce four checks written on September 25th and 26th — the same weekend on which the check in this case was drawn — which were returned for insufficient funds. The checks totaled around $2500.
These other checks were properly admitted. "The crime of false pretense has the requisite intent to defraud as its primary element. Therefore, it is generally admissible to show other similar criminal acts to prove this intent and such constitutes one of the major exceptions to the general rule that one cannot introduce prior criminal acts." C. Gamble,McElroy's Alabama Evidence, Section 70.01 (10) (3rd Ed. 1977). This evidence of other offenses was also admissible to prove that the now-charged crime and the other offenses were committed in keeping with or pursuant to a single plan, design, scheme or system. McElroy's, Section 69.01 (6). *Page 1048 
After Delevie's appointed counsel, John M. Gruenewald, had filed his brief raising the three issues we have just addressed, Delevie, who had been declared indigent, hired his own attorney, Thomas E. Haigh, who was given additional time to file his brief. The only issue raised in Haigh's brief was that Gruenewald failed to provide constitutionally effective assistance of counsel. Attorney Gruenewald has earned a reputation before this Court as an aggressive and effective advocate, zealously guarding the rights of his clients.
Haigh's brief contains Delevie's affidavit. Although it is not a part of the record, that verified statement contains serious and libelous allegations against appointed counsel. Delevie also asserts that appointed counsel was not present when he was arraigned.
The allegations in Haigh's brief are those commonly seen in a petition for writ of error coram nobis usually filed years after the conviction and long after memories have dimmed and records lost. They represent accusations which appointed counsel has not had the opportunity to answer. Because of the nature of those allegations and in an attempt to settle this issue as soon as possible, we remand this cause to the circuit court with directions that an evidentiary hearing be held on the issue of the competency of appointed counsel. The trial court is also directed to make a determination of Delevie's indigency. The trial court shall make written findings of fact on both these issues and forward those findings along with a transcript of the proceedings to this Court for review.
REMANDED WITH DIRECTIONS.
All Judges concur.