525 So.2d 820 (1985)
Ex parte State of Alabama.
(Re Larry O'Neal THOMPSON
v.
STATE of Alabama).
Ex parte Larry O'Neal THOMPSON.
(Re Larry O'Neal Thompson
v.
State of Alabama).
84-304, 84-305.
Supreme Court of Alabama.
September 27, 1985.
Rehearing Denied November 8, 1985.
*822 Charles A. Graddick, Atty. Gen., and Helen P. Nelson, Asst. Atty. Gen., for petitioner/ cross-respondent.
George H. Jones, Birmingham, for respondent/cross-petitioner.
Thomas M. Goggans of Goggans & McInnish, Montgomery, for amicus curiae Alabama Criminal Defense Lawyers Assn.
MADDOX, Justice.
Appellant Larry Thompson was found guilty of robbery in the first degree in violation of Code 1975, § 13A-8-41. He was sentenced under Code 1975, § 13A-5-9, the Habitual Felony Offender Act, to life imprisonment. The Court of Criminal Appeals affirmed his conviction conditionally and remanded the case to the trial court for a hearing on his claim of ineffective assistance of counsel at his trial.
Both Thompson and the State ask us to review that judgment. We consolidated both petitions and heard oral arguments. Thompson's primary claim is that he was improperly sentenced under the Habitual Offender Act. We address only Thompson's claim that he was improperly sentenced, and the State's claim that the cause should not have been remanded to the trial court.
The facts surrounding the robbery are adequately set out in the opinion of the Court of Criminal Appeals, 525 So.2d 816, and will not be repeated here.

I
Thompson's petition presents this question: Can convictions of felonies prior to January 1, 1980, the effective date of Alabama's Criminal Code, Title 13A, be considered to enhance the punishment of an offender? Thompson claims they cannot be considered. He says (1) that the interpretation given by the courts of the word "felony" in the Habitual Offender Act is overbroad and contradicts the meaning of the word "felony" intended by the legislature, and (2) that this Court was without authority to define "felony" as broadly as it did in Temporary Rule 6(b)(3)(iv), because the word "felony" was specifically defined by the legislature in the Alabama Criminal Code.
The applicable provisions of Alabama's Criminal Code and the Temporary Rules of Criminal Procedure adopted by this Court to carry out the intent of the legislature read as follows:
Code 1975, § 13A-1-2(4), defines a "felony":
"FELONY. An offense for which a sentence to a term of imprisonment in excess of one year is authorized by this title." (Emphasis added.)
An "offense" is defined in Code 1975, § 13A-1-2(1), as follows:
"OFFENSE. Conduct for which a sentence to a term of imprisonment, or the death penalty, or to a fine is provided by any law of this state or by any law, local law or ordinance of a political subdivision of this state." (Emphasis added.)
Code 1975, § 13A-5-9, which authorizes the imposition of additional penalties, provides as follows:
"In all cases when it is shown that a criminal defendant has been previously convicted of any felony and after such conviction has committed another felony, he must be punished as follows: [here are set out the authorized and required sentences]." (Emphasis added.)
Code 1975, § 13A-5-10, provides:
"The court may conduct a hearing upon the issue of whether a defendant is a repeat or habitual offender under section 13A-5-9, according to procedures established by rule of court." (Emphasis added.)
This Court, acting pursuant to the authority granted by the provisions of Code 1975, § 13A-5-10, adopted Temporary Rule 6(b)(3)(iv), Alabama Rules of Criminal Procedure, which provides:

"Any conviction in any jurisdiction, including Alabama, shall be considered and determined to be a felony conviction if the conduct made the basis of that conviction constitutes a felony under Act 607, § 130(4), Acts of Alabama 1977, *823 p. 812 (§ 13A-1-2(4), Alabama Criminal Code), or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980." (Emphasis added.)
Thompson contends that the phrase "by this title" in § 13A-1-2(4) was intended by the legislature to restrict the Habitual Offender Act only to those convicted of felonies under Title 13A. He argues that the courts cannot expand the meaning of "felony" beyond the plain language used by the legislature, and that his sentence was unlawfully enhanced, as a result of proof of two prior felony convictions, one for grand larceny and one for buying, receiving, and concealing stolen property, neither being a violation of Title 13A, Alabama Criminal Code.
The basic question presented is one this Court faced when it adopted Temporary Rule 6, and that question is: What did the legislature intend when it authorized the use of prior convictions to enhance the punishment for an offense committed under the provisions of the Alabama Criminal Code?
In determining this intent we are aided somewhat because the legislature itself has spelled out the general rule which courts should use in construing what it meant. In Code 1975, § 13A-1-6, the legislature set out the general rule of construction to be used. That section provides:
"All provisions of this title shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in section 13A-1-3. (Acts 1977, No. 607, p. 812, § 115.)" (Emphasis added.)
Code 1975, § 13A-1-3, referred to in § 13A-1-6, states the general purposes of the Alabama Criminal Code as follows:
"The general purposes of the provisions of this title are:
"(1) To proscribe conduct that unjustifiably and inexcusably causes or threatens substantial harm to individual and/or public interests;
"(2) To give fair warning of the nature of the conduct proscribed and of the punishment authorized upon conviction;
"(3) To define the act or omission and the accompanying mental state that constitute each offense;
"(4) To differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties for each;
"(5) To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted and their confinement when required in the interests of public protection; and
"(6) To prevent arbitrary or oppressive treatment of persons accused or convicted of offenses. (Acts 1977, No. 607, p. 812, § 105)." (Emphasis added.)
The Commentary to § 13A-1-6 "General Rule of Construction" contains the reasons for that section's inclusion in the Alabama Criminal Code:
"The rule laid down by this section places the construction of penal laws `according to the fair import of their terms.' `We agree to all the generalities about not supplying criminal laws with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean.' Justice Holmes, Roschen v. Ward, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1928).
"The original draft expressly abolished the common law rule that penal laws are to be strictly construed, U.S. v. Wiltberger, 18 U.S. (Wheat.) 76 [5 L.Ed. 37] (1820), a feature of many modern penal codes, e.g., New York Penal Law § 5.00, Michigan Revised Criminal Code § 115, Proposed Texas Penal Code § 1.05. The premise was that under the artificial rule of strict construction courts sometimes have taken the narrowest possible view of the language used by the legislature which occasionally results in the acquittal of offenders who are clearly within the letter and spirit of the law. `A more serious result is that (federal) criminal *824 law has been made intolerably cumbersome, as the legislative draftsman has sought to anticipate every possible narrow construction. ... A strict construction rule had greater merit in former times when the main responsibility for formulating English criminal law lay in the judiciary as a matter of common law. In those circumstances legislation could be regarded as an exceptional intrusion into the main body of judge-made law. There was no systematic code. But when the legislature has assumed responsibility for a comprehensive, integrated Criminal Code, it is not appropriate for the courts to presume that only the least possible alteration of a body of nonstatutory law was intended.' Working Papers, Proposed New Federal Criminal Code, p. 5.
"Actually, the old rule of strict construction is practically meaningless as it is seldom cited and then only to support a conclusion already reached by reference to the fair meaning of the words and phrases used in the statute and a consideration of the legislature's intent. Franklin v. State, 275 Ala. 92, 152 So.2d 158 (1963) (condemnation statute is highly penal and is strictly construed; that is, its enforcement is not to be extended beyond the letter of the law).
"In drafting the Proposed New Federal Criminal Code, the commissioners recognized that while modern courts seldom follow the rule of strict construction of criminal laws, an explicit repeal of the rule was unnecessary, and a general statement was used integrating the intended rule of construction of the Code provisions with a statement of general purposes. Comment § 102, General Purposes, p. 103. Cf. Model Penal Code § 1.02 for similar treatment.
"Under this section, not only must the alleged misconduct be covered by `the fair import' of the Criminal Code provisions, but also, under section 13A-1-3, the statute must be construed so that it gives `fair warning of the nature of the conduct proscribed and the punishment authorized upon conviction,' which is consistent with the constitutional requirement that punishment is authorized only for conduct which has previously been proscribed with fair warning to persons of ordinary intelligence and understanding. Rake [Rabe] v. Washington, 405 U.S. 314 [92 S.Ct. 993, 31 L.Ed.2d 258] (1972); Bouie v. [City of] Columbia, 378 U.S. 347 [84 S.Ct. 1697, 12 L.Ed. 2d 894] (1964); United States v. Harris [Harriss], 347 U.S. 612 [74 S.Ct. 808, 98 L.Ed. 989] (1954); Boyce Motor Lines, Inc. v. United States, 342 U.S. 337 [72 S.Ct. 329, 96 L.Ed. 367] (1952); Bolin v. State, 266 Ala. 256, 96 So.2d 582 (1957); Connor v. City of Birmingham, 36 Ala. App. 494, 60 So.2d 474, cert. denied, 257 Ala. 588, 60 So.2d 479 (1952)."
Guided by the above, we now proceed to determine what will "effect the objects of [§ 13A-5-9, the habitual offender statute]."
Code 1975, § 13A-5-9, was obviously enacted to allow more severe penalties to be assessed against persistent violators of the felony laws of the state. James v. State, 405 So.2d 71 (Ala.Cr.App. 1981). The goal of the Habitual Offender Act is to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. Lidge v. State, 419 So.2d 610 (Ala.Cr.App.), cert. denied, 419 So.2d 616 (Ala.1982).
Thompson's two prior convictions occurred before the effective date of the Habitual Offender Act, but it is undisputed that if those offenses had occurred after the effective date of the Habitual Offender Act, his offenses would have constituted felonies under Title 13A, because Thompson was convicted of offenses for which the law authorized a sentence of more than one year.
If the word "conviction of any felony" in § 13A-5-9 does not include convictions of felonies prior to the effective date of the Alabama Criminal Code, then Thompson is right.
*825 The crucial question, therefore, is: What did the legislature mean by the use of the words "convicted of any felony" and "felony" in § 13A-5-9? Did it intend to limit the provisions of the Habitual Offender Act to only those felonies committed after the effective date of the Alabama Criminal Code, and to only those offenses contained in the Alabama Criminal Code? We think not. While a strict construction of § 13A-1-2(4), which defines "felony," would require such a result, we do not believe that construction would "effect the objects of the law." Code 1975, § 13A-1-6. It is obvious that this Court, when it adopted Temporary Rule 6, did not construe the provisions of the law to limit the words "convicted of any felony" to only those felonies committed after January 1, 1980, the effective date of Alabama's Criminal Code, and to only those offenses contained in that Code.
It is clear that sentences for all offenses, both within and outside the new criminal code, must be imposed in accordance with the new criminal code. Code 1975, § 13A-5-1, states:
"Every person convicted of any offense defined in this title, or defined outside this title, shall be sentenced by the court in accordance with this article, unless otherwise specifically provided by law." (Emphasis added.)
It is clear from a reading of all the sections of the new criminal code that the legislature intended that all felons be subject to enhanced punishment under the Habitual Felony Offender Act. For example, the fact that drug offenses are not classified does not make a drug offense any less a felony or the perpetrator any less a habitual offender. In Motley v. State, 409 So.2d 945 (Ala.Cr.App.1981), the court answered an argument made by a defendant, convicted of attempted murder, that drug offenders were not treated as habitual offenders, as follows:
"The appellant's only contention is that the Alabama Habitual Felony Offender Act is unconstitutional because it does not subject drug offenders to the enhanced punishment all other offenders receive for repeated felonies. Appellant claims that this difference in treatment denies him equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.
"In our judgment, however, no equal protection question is presented because we hold that the legislature did not intend to exclude drug-related offenses from the operation of the Habitual Felony Offender Act. Section 13A-5-9, supra, directs that `a criminal defendant [who] has been previously convicted of any felony' be punished according to its terms. Under § 20-2-70, Code of Alabama 1975, all narcotic offenses not specifically excluded are felonies. Section 20-2-70 provides:
"`[A]ny person who possesses, sells, furnishes, gives away, obtains or attempts to obtain by fraud, deceit, misrepresentation or subterfuge or by the forgery or alteration of a prescription or written order or by the concealment of material fact or by use of false name or giving a false address controlled substances enumerated in schedules I, II, III, IV and V is guilty of a felony....'
"Thus, the legislature intended that all felons, whether drug offenders or otherwise, be subject to enhanced punishment under the Alabama Habitual Felony Offender Act when prior convictions have been shown. It is also clear that the legislature intended to provide for the classification of offenses defined outside Title 13A. Section 13A-5-4, Code of Alabama 1975, states:
"`Any offense defined outside this title which is declared by law to be a felony without specification of its classification or punishment is punishable as a Class C felony.' [Emphasis added.]
"Therefore, for enhancement purposes under Alabama's Habitual Felony Offender Act, as the law pertains today, narcotic offenses are to be considered Class C felonies.
"The fact that there is a lack of complete classification of drug offenses does *826 not make a narcotics violation any less a felony or the perpetrator any less an habitual offender. The drug offender, therefore, is no less subject to the recidivist penalties than any other repeat felon. To hold otherwise would undercut the very purpose of the Alabama Habitual Felony Offender Act." (Emphasis in original opinion.)
By adopting Temporary Rule 6, this Court placed emphasis on the "conduct" made the basis of the prior conviction, rather than where it occurred, or when it occurred. This Court, therefore, made the triggering mechanism not whether another jurisdiction might have punished the prior offense by imprisonment for more than one year, but whether Alabama considered the prior "conduct" so blame-worthy as to merit more than one year's imprisonment. The wording of the rule, therefore, has the following effect: (1) A conviction for an "offense" committed in Alabama prior to January 1, 1980, or after January 1, 1980, for that matter, punishable by a sentence of more than one year, is a "felony conviction"; thus, the fact that a defendant was convicted in Alabama and received a sentence of more than a year would necessarily mean that the prior conviction is a "prior felony"; (2) A conviction in any other jurisdiction, at any time, for a criminal act punishable in the other jurisdiction by a sentence exceeding one year, however, is not a "felony conviction" unless the act "would have been" punishable under our own criminal laws on or after January 1, 1980, by a sentence exceeding one year. We need not decide whether a conviction in any other jurisdiction, at any time, for an offense punishable in that other jurisdiction by a sentence not exceeding one year is, nevertheless, a "prior felony" if it "would have been" punishable by a sentence in excess of one year "had the conduct taken place in Alabama on or after January 1, 1980." Consequently, the rule does not say, and was not intended to say, that "a felony is a felony is a felony is anything punishable anywhere, anytime, by a sentence exceeding one year." By limiting the application of the Habitual Offender Act to the cases where the prior felony conviction involved conduct which would constitute a felony under Alabama's criminal laws, this Court has construed the Habitual Offender Act to guarantee equal treatment to all habitual offenders when the prior convictions are from jurisdictions outside Alabama, because the prior felony conviction is measured by the offender's conduct which gave rise to the conviction and whether such conduct constituted an offense punishable under the laws of this state by a sentence to a term in excess of one year.
We recognize, of course, that certain problems can occur under certain fact situations which make it difficult to determine whether a prior felony conviction can be used. In fact, the Court of Criminal Appeals has already been called upon to address one of these problems.
In Lidge v. State, 419 So.2d 610 (Ala. Crim.App.), cert. denied, 419 So.2d 616 (Ala.1982), the defendant's prior felony was here in the state of Alabama, in 1973; Lidge's conviction was for "grand larceny" under the old code. The old code defined "grand larceny" as (generally, but subject to many exceptions) the theft of property worth $25 or more, and punished it as a "felony." Tit. 14, § 331, Code 1940. The new code generally requires a theft of property worth $100 or more. Code 1975, § 13A-8-4(a). Upon his later conviction for robbery, under the new code, Lidge argued that his sentence as a habitual offender was improper. The Court of Criminal Appeals wrote: "This record does not state the value of the property stolen [in the prior offense]. The defendant argues that since no value is shown, it cannot be determined whether the crime would amount to a felony under the new Criminal Code." 419 So.2d at 614.
The Court of Criminal Appeals cited Rule 6(b)(3)(iv), but nevertheless concluded that § 13A-1-2(4), Code 1975, required the first offense to be treated as a prior "felony." That court wrote:
"The three year sentence of imprisonment in the penitentiary [in the earlier conviction] would bring grand larceny *827 within the definition of a felony under our new criminal code. Section 13A-1-2(4) provides that a felony is `an offense for which a sentence to a term of imprisonment in excess of one year is authorized by this title.'"
It is apparent that the Court of Criminal Appeals did not consider the last phrase, "authorized by this title," to be a limitation upon the right of the sentencing authority to use a conviction for an offense occurring prior to January 1, 1980. Implicit in its holding, however, is the emphasis the court placed on the prior conduct of the accused. In Lidge, what the Court of Criminal Appeals did, in effect, was to apply the Rule 6 test and uphold Lidge's conviction as a habitual offender, because the record showed that he received a sentence in excess of one year. Lidge's counsel did not raise the prior conviction question before this Court on petition for certiorari; therefore, this Court did not address it, but had it been raised, we would have reached the same result we reach today.
The issue of what constitutes a prior conviction under the Habitual Offender Act was raised in another case, where the conviction was for violating federal law.
In Carter v. State, 420 So.2d 292 (Ala. Crim.App.1982), cert. den., 420 So.2d 292 (Ala.1982), one of the defendant's prior convictions was based on 18 U.S.C. § 1708 (1970), possession of a check stolen from the United States mail. The Court of Criminal Appeals held that the federal conviction, although it carried a federal sentence exceeding one year, could not be used as a prior "felony" under Rule 6(b)(3)(iv). The Court of Criminal Appeals correctly framed the issue when dealing with crimes committed in jurisdictions outside Alabama. The court stated:
"The first question to be answered in deciding whether a federal offense constitutes a felony for purposes of the Habitual Felony Offender Act is whether there is a State counterpart for the federal crime. See generally Annot., 65 A.L.R.3d 586 (1975); Annot., 19 A.L.R.2d 232 (1951)." Id. at 297.
The Court of Criminal Appeals noted, "[T]he United States courts appear to have exclusive jurisdiction of crimes relating to mail theft." Carter v. State, 420 So.2d at 298. Actually, the possession of the check was one count of the federal indictment; the second count charged forgery of a check drawn on the United States treasury. The Court of Criminal Appeals held that the conviction as based on that second count could be used under Rule 6 because "[a]lthough Alabama has no criminal statute analogous to § 1708, supra, proscribing theft of mail or possession of stolen mail, this State does proscribe the receiving, retaining or disposing of stolen property. See Ala.Code § 13A-8-16 (1975)." Id.
The problem presented in Carter, whether the prior conviction was for conduct which would be classified as a felony under Alabama law, is not present here, because unquestionably the prior convictions here were for conduct proscribed as "felonies" under Alabama law, as in Lidge.
We recognize that there may be instances when a problem could arise in determining whether a prior conviction can be used, but we need not address every conceivable instance in which a problem might be presented. We do, however, believe it would be helpful to show how other jurisdictions have handled similar problems when prior convictions in other jurisdictions are used to enhance punishment.
Our research indicates that other jurisdictions are split as to the best method to use in determining whether such prior convictions can be used to enhance a defendant's sentence. New York, for instance, looks only to the face of the statute under which the defendant was convicted. In People v. Olah, 300 N.Y. 96, 89 N.E.2d 329 (1949), the New York habitual offender law in effect at that time allowed an out-of-state conviction to be considered a "prior felony" only if the "crime" committed out-of-state would have been a "felony" in New York. Olah had been previously convicted of larceny in New Jersey under a statute making it a crime (punishable by more than a year's imprisonment) to steal money or goods having a "value ... of or *828 above twenty dollars." The New York theft statute at that time punished as a felony the theft of property valued at $100 or more.
In the earlier New Jersey case, the indictment charged the theft of property valued at over $200, and Olah pleaded guilty. Nevertheless, the New York Court of Appeals held the New Jersey conviction could not be used as a "prior conviction" in the New York proceeding:
"Since an indictment not infrequently contains immaterial and nonessential recitals, we cannot determine the `crime' with which a defendant is chargedand, of course, of which he is convictedby mere examination of the indictment's allegations. To ascertain that `crime,' we must of necessity consider the statute which created and defined it and upon which the indictment was based.
"...
"The circumstance that Olah pleaded guilty to an indictment which recited that the items stolen were worth over $200 is entirely immaterial insofar as section 1941 is concerned. It is the statute upon which the indictment was drawn that necessarily defines and measures the crime. There is a difference between the `crime' of which a defendant was convicted and the `evidence' relied upon to establish that crime. And, by the same token, there is a difference between the `crime' of which he was convicted and the `act' which he may have committed. In other words, the crime, i.e., the operative facts which constitute the criminal offense as defined by the statute, cannot be extended or enlarged by allegations in the indictment or by evidence at the trial. Expressed somewhat differently, facts not specified in the statute upon which the indictment is based may not be rendered material or operative by merely stating them in the indictment...."
300 N.Y. at 96, 89 N.E.2d at 330.
The question Olah raised, as applied to Alabama is: How does a court determine if the defendant's conduct that resulted in his prior conviction constituted a "felony" in Alabama under the Habitual Felony Offender Act without retrying the earlier case?
The Supreme Court of Minnesota considered this very question in State v. Briton, 265 Minn. 326, 121 N.W.2d 577 (1963). There, the defendant's prior conviction was in Iowa, where the theft of $20 was a felony; Minnesota law required the theft of $25 for the conduct to constitute a felony. Evidence in the prior Iowa case indicated the defendant had stolen $46. Interpreting a statute similar to our Temporary Rule 6, the court wrote:
"We hold that extrinsic evidence is not admissible to prove that a conviction in a foreign jurisdiction would have been a felony in Minnesota if, by definition, that crime could have constituted an offense which is not a felony in this state. There are two reasons for our coming to this conclusion: (1) To hold otherwise would invite a retrial of prior prosecutions to determine the actual value of property which was the subject of the litigation in the foreign state with all the attendant difficulty of proof; (2) it is conceivable that a defendant in a felony prosecution may fail to contest the value of the property involved, only because in the particular jurisdiction where he is being tried the value charged and the value admitted constitute the same degree of the offense. The difference will not be material unless there is later occasion to determine whether the elements of the crime committed in one state constitute a felony in another state, a remote and unlikely ramification few offenders will have in mind."
265 Minn. at 329, 121 N.W.2d at 579.
Not all jurisdictions have followed the reasoning of the New York and Minnesota courts. In State v. Hines, 109 N.J.Super. 298, 263 A.2d 161 (1970), the defendant's prior conviction was in Pennsylvania, whose statute at the time simply punished "larceny" as a "felony." In the second state, New Jersey, the comparable statute in effect at the time punished as a "high misdemeanor" the theft of $50 or more. The defendant, relying on the reasoning of the New York Olah case, argued that a *829 Pennsylvania conviction of "larceny" would not support a finding of a prior felony under New Jersey law. The Court rejected the Olah reasoning:
"We are inclined to follow the approach taken by the California courts. The proper test under N.J.S.A. 2A:85-12 is not what the provisions of the foreign statute are, but rather, whether the offense committed in the foreign jurisdiction would be a high misdemeanor if it had been committed in this State. In order to meet that test, the entire record of conviction in the foreign jurisdiction must be reviewed. The Pennsylvania indictment shows that the value of the goods stolen by defendant was $564. We conclude, therefore, that the trial judge correctly held that the jury could consider the Pennsylvania conviction."
109 N.J.Super. at 305, 263 A.2d at 165.
New Jersey, therefore, focused on the conduct, as we have done in this case. We hold that the Hines case comes closer to carrying out the intent of our legislature, but we do not address in this opinion how the state can make proof of a "prior conviction." Under the New York-Minnesota approach, because of chance differences between the laws of two states, many defendants with felony convictions could escape the enhanced punishment which was unquestionably intended for them. The New Jersey-California approach, on the other hand, would effectuate the purposes behind habitual offender statutes, in general, and Alabama's in particular. It is interesting to note that New York, after Olah, changed its habitual offender statute to authorize finding that a prior conviction was a felony if, under the convicting state's law, the defendant could have been sentenced to prison for more than one year. In People v. Morton, 48 A.D.2d 58, 367 N.Y.S.2d 595 (1975), the New York Appellate Division held this statute to be a violation of equal protection. The court pointed out:
"[T]he implementation of this provision would serve to deprive defendants with prior out-of-state convictions of the equal protection of the laws. For example, convictions for vagrancy, blasphemy, or the theft of a turkey, if obtained in the proper jurisdiction, would mandate second felony offender status under the present statute for one later convicted of a New York felony. That such a result would be purely arbitrary and without a basis in reason is amply demonstrated by the fact that, had defendant fortuitously performed these very same earlier acts in the State of New York, he would still be entitled to first offender status upon his sentencing for his subsequent New York felony conviction."
48 A.D.2d at 60, 367 N.Y.S.2d at 597.
The New York legislature promptly responded to the Morton case by returning to a statutory scheme similar to the one involved in Olah, and which is similar to our own rule. This scheme is unquestionably constitutional. Watson v. State, 392 So.2d 1274 (Ala.Cr.App.1980).
In Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948), the United States Supreme Court stated:
"Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive.... The sentence as a ... habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."
In summary, we hold that Temporary Rule 6(b)(3)(iv) was adopted to further the purposes of the Habitual Offender Act, as intended by the legislature. The rule does not expand the provisions of law, but only assists courts in their application of the law; therefore, it does not violate the concept of separation of powers.

II
In its petition, the State contends that the Court of Criminal Appeals erred in remanding the case to the trial court for the purpose of holding a hearing on the question of the effectiveness of Thompson's *830 trial counsel. The State contends that Thompson should not be allowed to raise this issue on direct appeal, because claims of ineffective assistance of counsel constitute grounds for a writ of error coram nobis, citing Sheehan v. State, 411 So. 2d 824 (Ala.Crim.App.1981). We disagree.
Technically, a writ of error coram nobis is the appropriate writ because it brings a judgment before the original trial court for correction due to an error of fact not in evidence from the record that would have prevented the judgment. Alabama Section, Postconviction Remedies in Alabama, 29 Ala.L.Rev. 617, 631 (1978). The function of coram nobis is to correct a judgment that the trial court would not have rendered had it been aware of all facts. Summers v. State, 366 So.2d 336 (Ala.Cr.App.1978). Essentially, coram nobis operates as a motion for new trial based on newly discovered evidence. Tillis v. State, 349 So.2d 95 (Ala.Cr.App.), cert. denied, 349 So.2d 100 (Ala.1977).
As noted in Summers, supra, at 341:
"Challenges based on the inadequacy of counsel constitute grounds for coram nobis, Browning v. State, 57 Ala.App. 217, 326 So.2d 778 (1975), cert. denied, 295 Ala. 392, 326 So.2d 783 (1976), despite earlier indications to the contrary. Ex parte Argo, 41 Ala.App. [442] at 444, 137 So.2d 755; Ex parte Gammon, 255 Ala. 502, 505, 52 So.2d 369 (1951)."
Coram nobis, therefore, can now be used to raise claims of inadequate assistance of counsel, although earlier cases refused to allow this use of the writ. Those cases required that claims raising the issue of ineffective assistance of counsel be made by motion for a new trial. Ex parte Gammon, 255 Ala. 502, 505, 52 So.2d 369 (1951).[1]
The method used to raise the issue of ineffective assistance of counsel varies with the forum. Waltz, Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases, 59 Nw.U.L.Rev. 289, 290 (1964). Some jurisdictions allow such claims to be made by coram nobis, motion for new trial, and by direct appeal.
The Court of Criminal Appeals, in Delevie v. State, 454 So.2d 1044, 1048 (Ala.Cr. App.1984), remanded a cause, as it did here, thereby allowing the question of ineffective assistance of counsel to be raised by direct appeal. The State did not ask us to review that opinion; therefore, this is the first time we have been asked to consider the issue.
We believe the Court of Criminal Appeals, in Delevie, adequately justified allowing an accused to raise the issue of ineffective assistance of counsel on direct appeal. That court held:
"After Delevie's appointed counsel, John M. Gruenewald, had filed his brief raising the three issues we have just addressed, Delevie, who had been declared indigent, hired his own attorney, Thomas E. Haigh, who was given additional time to file his brief. The only issue raised in Haigh's brief was that Gruenewald failed to provide constitutionally effective assistance of counsel. Attorney Gruenewald has earned a reputation before this Court as an aggressive and effective advocate, zealously guarding the rights of his clients.
"Haigh's brief contains Delevie's affidavit. Although it is not a part of the record, that verified statement contains serious and libelous allegations against appointed counsel. Delevie also asserts that appointed counsel was not present when he was arraigned.
"The allegations in Haigh's brief are those commonly seen in a petition for writ of error coram nobis usually filed years after the conviction and long after memories have dimmed and records lost. They represent accusations which appointed counsel has not had the opportunity. *831 to answer. Because of the nature of those allegations and in an attempt to settle this issue as soon as possible, we remand this cause to the circuit court with directions that an evidentiary hearing be held on the issue of the competency of appointed counsel. The trial court is also directed to make a determination of Delevie's indigency. The trial court shall make written findings of fact on both these issues and forward those findings along with a transcript of the proceedings to this Court for review."
We hold that the Court of Criminal Appeals has authority to remand a case, if it determines justice would require it, to the trial court for a determination to be made on the defendant's claim that he was inadequately represented at his trial.
84-304 AFFIRMED.
84-305 AFFIRMED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON,[*] JJ., concur.
ON APPLICATION FOR REHEARING
MADDOX, Justice.
The State, on application for rehearing, presents the following issues:
(I) Whether this Court should extend its opinion to advise the Court of Criminal Appeals whether "justice requires" that this particular case be remanded to the trial court for a determination on the ineffectiveness claim?
(II) If this particular case is to be remanded, is the trial court required to hold a hearing?
On Issue I, we refuse to advise the Court of Criminal Appeals whether "justice requires" that this particular case be remanded. We assume the Court of Criminal Appeals has already made a determination that "justice requires" a remand in this case.
On Issue II, whether a hearing is required in this particular case is a question for the Court of Criminal Appeals to decide.
The record on appeal may prove the defendant's claim, or a hearing may be required in the case. Each case will depend upon its particular facts.
The opinion is extended, and the application for rehearing is overruled.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, BEATTY and HOUSTON, JJ., concur.
ADAMS, J., not sitting.
NOTES
[1] In Edwards v. State, 287 Ala. 588, 253 So.2d 513 (1971), a capital case, Edwards was allowed to raise his claim on direct appeal, through amicus curiae, that he was inadequately represented. The Court noted, however, that on appeal the reviewing court would be limited to the record and could not examine extrinsic evidence. Edwards, 287 Ala. at 591, 253 So.2d at 516.
[*] Houston, J., was not sitting when this case was orally argued, but has listened to the tapes of that argument, and has read the briefs before voting.