McMILLAN, Judge.
From a denial of appellant’s petition for writ of error coram nobis, after an eviden-tiary hearing on the merits, this appeal follows. For the reasons outlined below, the decision of the trial court is due to be affirmed.
On October 5, 1983, the petitioner was convicted of the offense of burglary in connection with two separate counts, and was given two sentences of 13 years’ imprisonment, with the sentences to run consecutively. According to the record, the convictions were affirmed after a direct appeal. On June 12, 1985, the petitioner filed a pro se petition for writ of error coram nobis alleging “ineffective assistance of counsel.” After legal counsel was appointed to represent the petitioner, a hearing was scheduled for July 15, 1985. On that date, the petitioner appeared and testified as to the allegations in the petition. At the evidentiary hearing, the only testimony taken on behalf of the petitioner was his own testimony. To rebut the allegations contained in the petition, the Honorable William P. Burgess, Jr., Attorney at Law, testified. After considering the testimony presented at the evidentiary hearing, the trial court entered an order denying the relief requested in the petition. It is from this denial that the present appeal follows.
Briefly outlined, the appellant made the following general claims in connection with his allegation that he was denied “effective assistance of counsel”:
1. Defense counsel failed to “prepare a defense” because an alibi witness, Debra Stacey, was not subpoenaed to testify at the trial of the case;
2. Defense counsel failed to obtain a severance of the offenses for purposes of trial;
3. Defense counsel failed to request that the trial judge instruct the jury to disregard certain prejudicial remarks made by the prosecution during the trial of the case;
4. Defense counsel allowed an incriminating statement, allegedly made by the petitioner, to be entered into evidence; and
5. Defense counsel failed to “invoke the rule” during the course of the trial.
From a review of the record, it is apparent that the claims concerning prejudicial re-
*1189 marks,[1] incriminating statements,[2] and failure to “invoke the rule”[3] are totally without merit. The remaining allegations concerning failure to subpoena a possible “alibi witness” and failure to obtain a severance will be considered in the following discussion.
The petitioner asserts that he was denied effective assistance of counsel because “defense counsel made no effort to prepare for the defense before the trial.” According to the petitioner, Debra Stacey, the “girl” that he was “going with,” would have testified at trial that the petitioner was “in Tennessee at the time this crime was supposed to have happened.” Stacey, however, was not called to testify at trial because William G. Burgess, the petitioner’s defense attorney, told him “the court would not believe her because she had been in trouble before.”[4] According to the petitioner, he requested that Burgess subpoena Stacey, regardless of her previous “trouble.” According to the petitioner, he knows “people who [have] been in trouble before who have testified before.”
In response to the petitioner’s allegations, the Honorable William P. Burgess, Jr., Attorney at Law, testified that, as defense counsel at the trial of the case, the decision not to call Stacey as a witness was made by his client, the petitioner in the present case. Burgess testified that he told the petitioner that Stacey’s prior felony conviction would probably be used by the State for impeachment purposes. Additionally, Stacey told Burgess that she “preferred not to testify.” Burgess stated that he would have subpoenaed Stacey had his client “directed me to do it.” Although the petitioner now claims that she was his “alibi,” Stacey’s testimony would not have helped “at all,” according to Burgess, because there was “no way that she could tie down what dates he did spend the night [with her].”
The petitioner also alleged that counsel was “ineffective” due to the defense counsel’s failure to “insist on the motion for severance of offenses he filed for [sic] which showed prejudice against defendant.” According to the petitioner, had he been tried “separate for the charges,” then he “wouldn’t be convicted because they use the same evidence on both charges in the same case.”
In response to this allegation, Burgess testified that he filed a motion to sever prior to trial because the appellant indicated that he would testify in connection *1190 with one of the cases.[5] Burgess felt that the motion to sever was meritorious because of the petitioner’s prior criminal history, which would be brought out if he took the stand. When his client decided not to testify in either case, Burgess reconsidered the motion to sever; he testified as follows:
“[Mr. Burgess]: And as we got to the trial after my speaking with [my client] it was not his wish to testify. And I felt an obligation to bring that to the attention of the trial court that he wasn’t going to testify. And at that point the judge would have told me he was either going to sever the offenses — I’ve forgotten how the judge was going to handle it — but that was based upon Jeffery’s testifying with regard to one of the offenses. And since Jeffery was not, we didn’t argue it. And, frankly, I don’t know now how we could have sustained that motion to sever.
“Q. Did he in fact testify in this trial?
“A. No, he did not. That was his election.
“Q. Would it be prejudicial in your mind to have two sets of felony offenses presented to the jury rather than only one set presented?
“A. I don’t think it helps but that in and of itself is not sufficient ground for severance. That’s my understanding of the law.
“Q. Were these the same incident, these two charges involved the same incident?
“A. They were both burglary, theft and receiving stolen property offenses, offenses that occurred at or about the same time and in stores which are next door to each other.”
In the present case, as in Reeves v. State, 475 So.2d 197 (Ala.Cr.App.1985), the “record does not sustain, in any sense, the appellant’s claim of the alleged ineffective assistance of counsel. To the contrary, the record fully establishes that [defense counsel] rendered conscientious, effective, and capable legal service to this appellant.”
The following guidelines have been established by the United States Supreme Court in reviewing claims of “ineffective assistance of counsel”:
“First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.
“Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the [conviction] resulted from a breakdown in the adversary process that renders the result unreliable.” Strickland v. Washington, 466 U.S. 668, -104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).
The court went on to note that the defendant must show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” 466 U.S. at -, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
Some of the general rules for consideration of a claim of “ineffective assistance of counsel” raised in an error coram nobis proceeding have been set out by this court, per Judge Patterson, in the recent case of Haynes v. State, 461 So.2d 869 (Ala.Cr.App.1984), as follows:
“Challenges based on the inadequate and ineffective assistance of counsel constitute grounds for coram nobis. Sheehan v. State, 411 So.2d 824 (Ala.Cr.App.1981). Counsel is presumed adequate and the fact that the petitioner was convicted does not establish incompetency or lack of zeal. Sheehan v. State. The heavy burden of proving otherwise rests upon the defendant. Zeigler v. State, 443 So.2d 1303 (Ala.Cr.App.1983). Effective representation of counsel does not *1191 require that counsel be errorless, and a showing that counsel made a mistake unfavorable to the defendant is not sufficient to establish inadequate representation. Zeigler v. State, supra. Objections to testimony and requests for jury charges are matters of trial strategy and, absent a clear showing of improper or inadequate representation, are to be left to the judgment of the trial counsel. Zeigler v. State, supra; Trammell v. State, 276 Ala. 689, 166 So.2d 417 (1964). A defendant is not denied effective assistance of counsel merely by reason of a disagreement with his attorney. Zeigler v. State, supra.”
It would appear that, under the circumstances of this case, counsel’s decision not to pursue the legal procedures suggested by the petitioner constituted an exercise of his “reasonable professional judgment” and did not constitute a deficiency in his professional performance. Since there was no professional error, it is not incumbent upon this court to determine whether any actual prejudice to the petitioner occurred as a result.
From the factual development, as outlined above, it is apparent that the petitioner failed to carry his burden of proof to show that he was denied effective assistance of counsel. The trial court generously allowed the petitioner the opportunity to present testimony in support of the mere allegations contained in his petition. As to the petitioner’s claim that Stacey should have been called to testify, “ ‘Whether to call a certain witness is generally a matter of trial strategy.’ ” Martin v. State, 480 So.2d 54 (Ala.Cr.App.1985). As to the petitioner’s remaining claims, “[T]he constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not ensure that defense counsel will recognize and raise every conceivable constitutional claim.” Dunkins v. State [Ms. 6 Div. 591, April 9, 1985] (Ala.Cr.App.1985).
Here, as in Carter v. State, 473 So.2d 668, 671 (Ala.Cr.App.1985), it can be concluded that “counsel was not ineffective in a constitutional sense as argued by this petitioner.” After a thorough review of the record on appeal, we are convinced that “the trial judge was in a better position than are we to determine the truth of the crucial factual issue in the proceeding.” Holman v. State, 462 So.2d 1035, 1037 (Ala.Cr.App.1984). Thus, the judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.

. During closing arguments, certain "prejudicial remarks” were made by the State’s Attorney, according to the petitioner. At the hearing, the petitioner admitted that defense counsel objected to the remarks and that the trial judge sustained the objection. According to the petitioner, however, defense counsel did not "ask the trial judge to ask the jury to strike the prejudicial remarks from their mind. And I believe if he had did [sic] that and the judge had instructed them that they might not have took that against me as much.” (Although a direct quotation from the trial transcript was not read into the record, the appellant’s petition indicates that the prejudicial remark consisted of the following: "Ladies and gentlemen, we have a thieving body in the house." According to the petitioner, the phrase "thieving body” referred to him.)

. The petitioner testified that he did not give an incriminating statement to the police officers, even though, at trial, they testified otherwise. On cross-examination, the petitioner denied that he directed the police officers to the place where they could recover the gun which was used during the burglaries. According to the petitioner, "I was sitting at the Huntsville Police Department when they say they went and got the gun.” Although the petitioner’s fingerprints were found on the cash box, he explained: "Sir, I don’t think them [sic] was my fingerprints.”

. The petitioner alleged that defense counsel's failure to invoke the rule until “half way” through the trial prejudiced him. According to the transcript and Burgess's testimony, the rule was invoked after the two victims had testified because, at that time, “several officers must have walked in together.” Prior to that time, the only witness in the courtroom was Officer Bill Black, who was scheduled to testify after the victims presented their testimony. Both of the victims stated that they did not know who burglarized their place of business. The victims' testimony was presented for the limited purpose of establishing that a crime actually took place.

. Note that Debra Stacey, the petitioner’s alleged "alibi witness,” was also not called to testify at the evidentiary hearing on the petition for writ of error coram nobis.

. Testimony in the record indicated that the two sets of burglary, theft and the receipt-of-stolen property charges arose from occurrences at two separate businesses. One of these was "California Concepts” and the other place of business was next door.